Maxwell, J.
September 15,1900, there was lodged in the office of the cleric of this court what purported to be an authenticated copy of the record in this case.
Defendants in error, June 20,1901, filed a motion to dismiss the appeal upon the ground that the record filed had been authenticated by the judge of the county court of Archuleta county, and not by the cleric, there being at the time of such authentication a duly appointed cleric.
Plaintiff in error conceded this point to be well taken, and asked leave to withdraw the record for the purpose of having the same duly authenticated.
This motion to dismiss was denied, and leave to withdraw the record granted.
The record was withdrawn and refiled November 7, 1901, authenticated by the clerk of the court below.
November 29, 1901, defendants in error renewed their motion to dismiss, which motion was denied, with leave to renew and argue the same on final hearing.
The authentication of the transcript of the record is a clerical duty.
In McNevins v. McNevins, 28 Colo. 247, the supreme court has said:
“While the court may dispense with the services of the clerk and revoke the appointment, and then *116 resume the power to perform- clerical duties, yet, so long as the appointment of the clerk, once made, is not revoked, the latter official alone, or by his deputy, has power to discharge the clerical duties of the office. ’ ’
The record filed herein, having been authenticated by the judge, was a nullity, and section 389 of the Civil Code, which requires the appellant to file in the office of the clerk of this court an authenticated copy of the record of the judgment appealed from, by or before the third day of the next term of the court, not having been complied with, the appeal should have been dismissed.
Perkins v. Boyd, 17 Colo. App. 447, and Moynahan v. Perkins, 17 Colo. App. 450, are in conflict with Taylor v. Colorado Iron Works, 29 Colo. 372, and the rule herein announced, and are hereby overruled.
Plaintiff in error invokes the aid of section 388a, Mills’ Ann. Code, which provides:
“Whenever the supreme court or the court of appeals shall dismiss an appeal for lack of jurisdiction to entertain the same, and it- appearing that the court would have jurisdiction if the action had come up on writ of error, the court shall order the clerk, without additional fees, to enter the action as pending on writ of error, and thereupon all the proceedings shall be such as if the action had originally been brought -to the court on writ of error. ’ ’
Defendants in error contend that more than three years having elapsed since the rendition of the judgment herein, the court is as powerless to order the case redocketed on error as the plaintiff in error would be to now sue out a writ of error.
We do not construe the above quoted section of the code, to permit or command a redocketing of the case on error, in a sense which would involve the issuance of a scire facias, and proceedings incident *117 to the commencement of a new suit by writ of error. The command is, “The court shall order the clerk * * * . to enter the action as pending on writ of error, and thereupon all the proceedings shall be such as if the action had originally been brought to the court on writ of error. ’ ’
The language indicates that it was the intention of the legislature to provide a method to reach just such cases as this record presents; that the case should be considered as pending on error and not on appeal, from the day when the record was filed; that it should not lose its place or number on the docket, and should be considered and determined when reached, as if it had originally been brought here on writ of error.
The jurisdiction of this court to entertain this matter, if it had come up on writ of error, must be conceded, and we think that the case falls within the mandate of the above quoted section of the code.
Such seems to have been the view taken by the supreme court in D. & R. G. R. R. Co. v. Peterson, 30 Colo. 77, where it is said:
“The case was docketed as an appeal from the county court of El Paso county. This court has jurisdiction to review the judgment by writ of error, but not on appeal. In such circumstances, our statute provides that the appeal shall be dismissed and the case redocketed on error. Orders so providing are therefore entered. ’ ’ — Mills ’ Ann. Code, section 388a.
The motion to dismiss will be allowed, the clerk ordered to enter the action as pending on writ of error. Orders so providing are therefore entered.
This suit was commenced before a justice of the peace by plaintiff in error against C. W. Chambers and R. J. Chambers, upon a promissory note.
C. W. was not served with summons, did not *118 appear, and suit was dismissed as to Mm by the justice of the peace.
A jury trial resulted in a verdict and judgment in favor of R. J. On appeal to the county court, before the trial, the suit was again dismissed as to C. W., and a jury trial again resulted in a verdict and judgment in favor of R. J. Therefrom this writ of error is prosecuted.
Twenty-five errors are assigned. Only those, however, relied upon by counsel in his brief, will be considered, which challenge the action of the court in dismissing the suit as to C. W., the instructions to the jury given at the request of the defendant, and the sufficiency of the evidence to support the verdict.
C. W. entered a special appearance in the county court, moved a dismissal as to himself, for the reason that summons had not been served upon him, which motion was supported by his affidavit. The motion to dismiss, the affidavit in support thereof, and exception to the ruling of the court thereon, are not made a part of the record by the bill of exceptions, and therefore the assignment of error based thereon cannot be considered. — Rudolph v. Smith, 18 Colo. App. 496.
There being no pleadings, we gain a knowledge of the facts from the evidence, from which it appears that the note sued on is for $100.00, dated January 4, 1893, payable 6 months after date, to the order of S. E. Bowling, plaintiff in error, who is the wife of H. R. Bowling who acted as plaintiff in error’s agent throughout the transactions herein involved.
It is conceded that R. J. signed the note as surety for C. W. R. J. defended upon the grounds; First, that after maturity of the note, without his knowledge or consent, the owner of the note granted an extension of time to the principal; Second, that after the maturity of the note, he notified the owner thereof *119 that the principal was disposing of his property with a view of leaving the state, and that he wanted the matter settled np.
With the general verdict in favor of defendant in error R. J., the jury returned answers to twelve questions submitted to them by the court, at the request of counsel for plaintiff in error. These special findings were substantially: That the note had not been paid; that there was due thereon $185.93; that plaintiff agreed with the principal to extend the time of the payment of the note; that the principal did not pay, deliver or give, or promise to pay, deliver or give to the owner of the note, anything of value, or any consideration whatever, for such extension.
There is no conflict of authority as to the rule that an agreement to extend time in order to have the effect of discharging the surety, must be supported by a sufficient consideration; it must be a valid agreement between the maker and holder of the note. — Winne v. Colo. Springs Co., 3 Colo. 155; Fisher v. Bank, 22 Colo. 373; Drescher v. Fulham, 11 Colo. App. 62; Brandt on Suretyship, etc., sec. 342.
The special findings clearly indicate that the general verdict in favor of the surety was not based upon the defense that the surety was discharged by reason of a valid agreement of extension, and it will not be necessary to consider the assignments of error based upon instructions to the jury upon this proposition.
No special findings were requested or made upon the second defense interposed by the surety. Upon this proposition the record discloses that R. J. testified that six months after the maturity of the note he had a conversation with Mr. Bowling in the presence of his son regarding the note. In this connection, his testimony was:
*120 “Q. Will you state to tlie jury exactly what transpired at this conversation?
“A. Why, 1 notified Mr. Bowling .that my brother had property, and that he was selling, and expected to settle up his business, as he was going to leave the state on account of his wife’s health, and was able to pay it at that time, and I wanted it settled, and I told Mr. Bowling plainly that I wanted it settled.”
And on cross-examination:
“Q. What was said about the note?
“A; I don’t remember; I think I said, ‘Mr. Bowling, I would like to have you present that note for payment, and settle it up.’
“Q. What else did you say?
“A. I told him that my brother was selling his property with the view of removing from the state, and I wanted him to get it settled.”
The foregoing is all his testimony upon this point.
The son corroborated the above testimony. Mr. Bowling positively denies ever having had such conversation.
At the request of defendant, over the objection of plaintiff, the court gave the jury the following instruction:
“If you find from the evidence that R. J. Chambers was surety on said note, and was known as such at the time of the execution of said note tó H. R. Bowling, agent for S. E. Bowling, and if you further find from the evidence that after the maturity of said note R. J. Chambers, the surety on said note, requested H. R. Bowling to proceed to collect the same, and that H. R. Bowling failed and neglected to do the same, that at said time C. W. Chambers, the principal maker of said note, was in solvent circumstances, that afterwards he became insolvent, then *121 you are instructed to find for defendant, R. J. Chambers, and release him from all obligations under said note. ’ ’
It is said that authority for this instruction is found in Martin v. Skehan, 2 Colo. 615, wherein it was held that, in an action in assumpsit, upon a joint and several promissory note, a plea by the surety to the effect that, shortly after the maturity of the note, he notified and requested the plaintiff to forthwith proceed and collect the note of the principal, which was not done, that the principal afterwards became insolvent and that the surety, through the defendant’s laches, lost the indemnity which he would have had if the plaintiff had been diligent in the premises, was a good defense in law.
We do not think the facts disclosed by the record bring this case within the rule laid down in Martin v. Skehan. There, it will be noted, the plaintiffs were notified and requested to forthwith proceed and collect the note; here, the surety said to the holder, “I want it settled, and told Mr. Bowling plainly that I wanted it settled.” This comes far short of being a notice or request to forthwith proceed and collect the note, and may be said to be simply the expression of a wish or desire, which every honest man would entertain with reference to a pecuniary obligation resting upon him.
In discussing this subject, Brandt, in his work on Suretyship, etc., § 240, says:
“A notice to the creditor to sue, which will discharge the surety if not complied with, should be so clear and distinct that the meaning of the surety can be at once apprehended without explanation or argument. ’ ’
• The legislatures of many states have, by statute, provided that the surety may, by notice, require the creditor to proceed by suit against the principal, and *122 a failure upon tlie part of the creditor so to do, and subsequent insolvency of the principal, discharges the surety. We have no such statute in this state.
An examination of the authorities which support the rule laid down in Martin v. Skehan, supra, leads to the conclusion that the courts which have adopted the rule are not disposed to extend it; that it is not one to be applied with laxity; that, to discharge a surety by reason of neglect to proceed against the solvent principal, on request, it must be shown that the creditor was requested to enforce the collection of the debt by “due process of law”; a hint to sue is not sufficient; the request or notice must be clear and explicit, not liable to misapprehension or misunderstanding, and must be a positive direction to sue. — Goodwin v. Simonson, 74 N. Y. 133; Singer v. Troutman, 49 Barb. 182; Greenawalt v. Kreider, 3 Pa. St. 264.
In the case under consideration no request whatever was made by the surety, upon the creditor, to proceed in any manner to collect the note; simply an expression of the surety to the effect that he wanted the note settled.
The instruction quoted above, under the facts disclosed by this record, was erroneous, in that it assumes that there was evidence to support the contention that the surety had requested the creditor to proceed to collect the note.
In Fisk v. Greeley Electric Light Co., 3 Colo. App. 319, 324, this court has said:
“The instructions should, in all cases, bé based upon the evidence, and an instruction, no matter how correct the principle which it may announce, that impliedly assumes the existence of evidence which was not given, is erroneous. It is calculated to bewilder and mislead the jury by producing the impression that, in the mind of the court, some such *123 state of facts as the ■ instruction supposes may be inferred from the evidence given, or concealed within it. The authorities upon this proposition are numerous and uniform.” (Citing a number of eases.)
For this error, the judgment of the. court below

Reversed.