[No. 8548.]

EL PASO CONSOLIDATED GOLD MINING CO. V. MCCHESNIE.

1. *Evidence—Competency.* Action for the death of a servant, attributed to negligence of the master in requiring, by its shift boss, the deceased to work in an unsafe place.

Evidence of prior "cave-ins," at other points in the same drift, and that the shift boss had knowledge thereof, *held* incompetent. (147.)

2. INSTRUCTIONS—*Not Applicable to the Evidence.* An instruction which is directed to a question upon which there is no evidence, is misleading and improper. Action for the death of plaintiff's husband killed by the fall of a rock, while employed in the mine of defendant. The court charged, that "if the shift boss * * * deems the place safe, the employe has the right to assume that the place is safe, unless the danger is obvious." There was no evidence that any representative of the defendant deemed the place safe, and the shift boss, as appeared by plaintiff's own evidence, had directed deceased not to work in the place where he was killed.

The instruction held error as tending to create in the minds of the jury the impression that the shift boss had assured the deceased of the safety of the place. (148.)

*Error to Teller District Court.* Hon. W. S. MORRIS, Judge.

*Department.*

Mr. WILLIAM E. HUTTON and Mr. BRUCE B. McCAY, for plaintiff in error.

Mr. E. G. VANATTA, for defendant in error.

Opinion by Mr. Justice TELLER.

The defendant in error is the widow of one Edgar Mc-Chesnie, who was killed on April 28, 1914, while in the employ of the plaintiff in error as a mucker and trammer in one of its mines.

The complaint alleges negligence on the part of the defendant company which resulted in the killing of McChesnie. The answer sets up the assumption of risk by the deceased, and charges contributory negligence on his part.

The jury found in favor of the plaintiff, and assessed her damages at $5,000. Judgment was entered on the verdict for that amount.

Error is assigned on the admission of evidence over defendant's objection; on the court's refusal to direct a verdict for defendant; and on one of the instructions given.

The complaint alleged that the place where McChesnie was working was dangerous because of a loose, hanging rock in the wall; that defendant's shift boss knew of the danger but nevertheless directed McChesnie to go on with the work, saying that the place was safe, and that later he, the shift boss, would shoot the rock down.

This shift boss, one Adams, and a fellow trammer named Jones, were called and testified as witnesses for plaintiff. Adams testified that on Sunday, April 26th, McChesnie called his attention to the hanging rock which afterwards fell and killed the latter; that he sounded it with a hammer and it appeared to be solid. On Tuesday when Adams visited the drift on his regular rounds, he and McChesnie tried the rock with a bar in an attempt to bring it down. At that time the muck pile in front of the rock had been so far removed as to expose the base of the rock,

and to disclose a crack extending upward in the rock for a distance of some eighteen inches. They failed to loosen the rock, and on sounding it with a hammer it still appeared to be solid. Thereupon, Adams says, he told McChesnie not to work under the rock, though it appeared safe, but to clean up the track, and to get powder and shoot the rock down before he went to supper. He further says, that McChesnie asked him how to shoot the rock, and that he showed him where to place the powder. Adams then left the drift, and within half an hour the rock fell, and killed McChesnie.

Jones, the trammer, testified that Adams and McChesnie made an examination of the rock on Sunday, and that witness and McChesnie examined it carefully on Tuesday, the muck pile being then so low that the crack in the rock could be plainly seen; they tried to bring it down with a pick, and failing, concluded it was safe for the present; was not there during all the time Adams was in the drift, and did not hear his instructions to McChesnie; was bringing in an empty car, and when about thirty feet from the muck pile saw the rock fall; found McChesnie on the muck pile under the rock.

The court, over defendant's objections, allowed testimony to be introduced to show that there had been "cave-ins" at other points in the drift, not in the immediate vicinity of the place of the accident, and that the shift boss knew of the fact.

This was error. The fact that there had been falling rocks at other places in the mine could not throw light upon the issue on trial, and evidence as to the conditions or happenings at other points could only confuse the jurors, and possibly produce impressions as to the condition at the place of the accident contrary to the facts. The condition at that point was susceptible of proof, and proof was made of it.

It was for the jury to determine the issue presented

from the evidence of conditions at the point, in connection with the conduct of the parties in relation to those conditions. This is definitely settled as the law in this state by the case of *Diamond Rubber Co. v. Harryman*, 41 Colo. at page 422, 92 Pac. 922, and followed in *Griffith v. Denver*, 55 Colo. 37, 132 Pac. 57.

Instruction number three was that:

"It is the duty of the master to provide an effective system of inspection of the places wherein employees are to work, and if you find from the evidence that the foreman or shift-boss, or the person designated by the master for such inspection, makes an inspection of any particular danger called to his attention by an employee, or otherwise, and upon such inspection he deems the same safe, the employee has a right to assume that the place is safe, unless the danger was an open and obvious one, and that the employee had knowledge of such danger, or that by the exercise of reasonable care and caution could have obtained knowledge of such danger."

It is elementary that an instruction should not be given if there are no matters in evidence, pertinent to the issue, to which it can apply. Such an instruction is likely to bewilder and mislead the jury. *Bowling v. Chambers*, 20 Colo. App. 113, 77 Pac. 16

There is no evidence to which this instruction can be applied.

The shift-boss testified that he told McChesnie not to work in the place of danger, but to make the place safe by shooting down the rock. That was plaintiff's own evidence, and it is not disputed. There is no evidence that any representative of the defendant deemed the place safe; and if he had so deemed it, he must have announced the fact before an employee could have relied upon it. The jury from this instruction might well have concluded that the court considered Adams as having assured McChesnie that the place was safe, and for that reason found defendant negligent.

For these reasons the judgment is reversed and the cause remanded.

CHIEF JUSTICE GABBERT and Mr. JUSTICE HILL concur.