Sullivan, &c., v. Kuykendall.

CASE 77—EVIDENCE—JANUARY 22, 1885.

## Sullivan, &c., v. Kuykendall.

| 82 | 483 |
| f131 | 844 |
| 131 | 845 |

APPEAL FROM WARREN CIRCUIT COURT.

The mailing of the letter read on the trial of the case created no legal presumption, but was proper testimony to be considered by the jury, together with the other evidence, in determining when it was received. They should not have been instructed that a presumption arose from it, which must prevail unless overthrown by other satisfactory evidence.

The appellee went to a telephone office at Morgantown to communicate with appellants, at Bowling Green, directing the operator to converse for him with them. He first directed the operator to call for appellant, Sullivan, and the operator at B. reported that he would send for him to come to his office. Soon after, the operator at Morgantown told appellee that Sullivan was at the Bowling Green office. Sullivan using the telephone for himself, and the Morgantown operator for appellee, they had a conversation of some length.

Sullivan, &c., v. Kuykendall.

*Held*—That it was competent in a subsequent suit between the parties for appellee to prove, by himself and others, what the operator at Morgantown reported to him as coming from appellant, Sullivan, the operator not remembering what he reported to appellee.

HALSELL & MITCHELL AND E. W. HINES FOR APPELLANT.

1. The instruction complained of in effect tells the jury that, notwithstanding appellants' denial, the presumption arising from the fact of mailing a letter to appellants must prevail, unless it is overthrown by satisfactory evidence that the letter was not so received. In fact that appellants must prove a negative.

2. The court erred in permitting appellee to prove, by his own testimony and that of others, what the operator at Morgantown reported to him as coming through appellant, Sullivan, from Bowling Green, the operator not being able to state what he reported to appellee. It is hearsay evidence. (10 Allen, 457; 4 *Ib.*, 457; 45 Maine, 50; 69 Penn.,. 156; 17 Mich., 282.)

NAT. A. PORTER FOR APPELLEE.

1. It was a part of the contract that notice was to be given by letter if Kuykendall chose to so give it. It is in proof that appellants received their mail daily. So that a *prima facie* evidence was in the record. The instruction was correctly given.

2. It is a rule that the best evidence that exists must be produced, and, in the absence of direct proof, it was competent to permit appellee to prove, by himself and others, what the operator at Morgantown reported to him while the conversation was going on between appellant and appellee. (1 Greenleaf Ev., section 183; 1 Phillips Ev., page 385; 105 Mass., 391; Greenleaf Ev., section 40; 69 Penn., 156;. 4 Allen, 45; 36 Conn., 80.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

By the terms of a verbal contract for the sale of personal property, the appellants, Sullivan & Co., were to estimate and receive it within ten days after notice from the appellee, Kuykendall, that it was ready.

On January 26, 1880, he wrote them a letter, which,. by due course of mail, should have been received by them within the next two days, but which, in point of fact, as the testimony shows, was not received until February 17, 1880, notifying them that the property would be ready for them on February 9, 1880.

About the eleventh or twelfth of February, 1880, ·Green river began rising, and by the fourteenth of the same month had overflowed its banks, and the property, being along them, was in the main destroyed.

The letter above named was properly enveloped, stamped and deposited in the post-office, and addressed to the appellants at their usual post-office.

The lower court, in substance, instructed the jury that if they believed, from the evidence, that said letter was written, addressed to the appellants at their proper post-office, duly stamped and placed in the office, then the presumption was that it was received in due course of mail, and that this presumption must prevail, unless overthrown by satisfactory evidence that it was not so received.

This instruction was doubtless based upon the statement to be found in some text-books and a few cases, ·to the effect that when a letter is sent by the post, it is to be presumed, from the known course in that department of the public service, that it reached its destination at the usual time, and was received by the person to whom it was addressed, if living there and usually receiving his letters at that place.

It will be found, however, that the most of these cases go no further than to hold that, in the absence of all other evidence upon that point, the mailing of a letter, properly directed, raises a presumption that it was received, and that this presumption must prevail unless rebutted by other testimony.

In the leading case of Huntly v. Whittier, 105 Mass., ·391, the learned judge (Gray, J.) said that the depositing of a letter in the post-office, addressed to a mer-

chant at his place of business, is *prima facie* evidence
that he received it in the ordinary course of mail; but
that the jury should be so instructed only in the *absence*
of other testimony upon the point.

The case of Russell v. Buckley, 4 R. I., 525, is to the
same effect; while authority is abundant, that the mail-
ing of a letter creates no presumption whatever that it
was duly received.

In United States v. Babcock, 3 Dillon's C. C. Reports,
571, Judge Dillon uses this language:

"Upon the subject of the admissibility of letters, by
one person addressed to another, by name, at his known
post-office address, prepaid, and actually deposited in
the post-office, we concur, both of us, in the conclusion,
adopting the language of Chief Justice Bigelow, in:
Commonwealth v. Jeffries, 7 Allen, 563, that this is evi-
dence tending to show that such letters reached their
destination, and were received by the persons to whom
they were addressed.

"This is not a conclusive presumption, and *it does
not even create a legal presumption that such letters
were actually received;* it is evidence tending, if cred-
ited by the jury, to show the receipt of such letters."

In the case of negotiable paper, it has long been held
that the depositing of a letter in the post-office by the
holder to the indorsers is not only good *prima facie*
evidence, but sufficient to establish the fact that notice
was given. But this rule has been established by
the law merchant through commercial necessity.

By the common law, this presumption did not exist
even as to negotiable paper; and, after a careful exam-
ination of the authorities, we are satisfied that it ought:

not to be held to arise in ordinary business transactions, and especially between men whose business does not require them to watch the arrival of the mails. (Freeman v. Morey, 4 Maine, 50 ; National Bank v. McManigle, 69 Penn., 156 ; Greenfield Bank v. Crafts, &c., 4 Allen, 447.)

The mailing of the letter in this instance created no *legal* presumption, but was proper testimony to be considered by the jury, together with the other evidence, in determining when it was received ; and they should not have been instructed that a presumption arose from it which must prevail, unless overthrown by other satisfactory evidence.

The instructions in other respects were unobjectionable.

The appellants relied upon an alleged new contract between them and the appellee, by which the one sued upon was annulled ; but this was a question of fact as to which the testimony was conflicting ; and the finding of the jury would not, therefore, be disturbed, if this were the only question presented by this appeal.

In view of another trial of the case it is proper that we should pass upon what seems to us to be a new question as to the competency of certain testimony ; at least we have been unable to find any direct authority upon it.

The appellee, upon going to the place, on February 9, 1880, where the property was to be received, did not find the appellants, or any one representing them.

He thereupon went to a telephone office at Morgantown, Kentucky, for the purpose of communicating with the appellants at Bowling Green, Kentucky ; and

not being accustomed to the use of the instrument he got the operator to talk for him.

He first directed him to call for the appellant, Sullivan, and he did so, the Bowling Green operator reporting back that he would send for him to come to the office. Presently the Morgantown operator told the appellee that Sullivan was at the Bowling Green office and desired to know what was wanted, and thereupon a conversation took place, Sullivan using the instrument himself while the Morgantown operator talked for the appellee, and told him what Sullivan said as it came over the wire.

The latter testifies that on that day he had a conversation over the telephone with some one at Morgantown, and upon the same subject to which the appellee says the conversation related; but they differ widely as to what was said. The Morgantown operator, being introduced as a witness, testifies that upon the day named he had a conversation upon that subject with some one at Bowling Green, whom the operator there told him was Sullivan; but that he does not recollect what was said. Under this state of case the court below permitted the appellee to prove, by himself and two other persons who were present at the time, what the Morgantown operator reported to appellee, while the conversation was going on over the wire, as being said by Sullivan.

It is certain that the latter did talk over the wire, because he says so. The appellee did not pay the telephone charge, and it does not appear who did, save the Bowling Green operator reported to the Morgantown one that Sullivan would do so; and the latter is silent upon this point.

It would, beyond question, have been competent to prove, by the Morgantown operator, what Sullivan said to him ; but whether his report to the appellee of what Sullivan was saying, made as the conversation progressed, is competent or falls within the domain of incompetent hearsay testimony, is a question of importance in view of the astonishing growth of the business to which it relates, and one not free from difficulty.

In the case of a telegram, the original must usually be produced in evidence, or its loss shown, before its contents can be proven or the copy delivered by the operator to the party receiving the message used, unless it be where the copy becomes primary testimony by the telegraph company being the agent of the sender.

( In the use of the telephone, however, the parties talk with each other as if face to face ; and, save where a mere message is sent, there is no written evidence of what has passed. By inventive means they are brought together for the transaction of business.

It is a well settled rule that where one, through an interpreter, makes statements to another, the interpreter's statement, made at the time, of what was so said, is competent evidence against the party.

The interpreter need not be called to prove it, but the interpreter's statement, made at the time, may be proven by third persons, who were present and heard it. (Camerlin v. Palmer Co., 10 Allen, 539 ; Schearer v. Harber, 36 Ind., 536 ; 1 Greenleaf's Ev., section 183 ; 1 Phillips' Ev., 519, side-page.)

The reason of this rule is that the interpreter is the agent of both parties, and acting at the time within the scope of his authority, and we have been unable to

draw any satisfactory distinction between this case and the one under consideration.

The argument is at least plausible, if not correct, that the testimony in question is competent as a part of the *res gestae*, aside from the question of agency.

It is true the parties can not see each other, but the statements of an interpreter between blind persons could be proven by third parties without calling the interpreter as a witness, and by telephonic means persons are as much together for all purposes of conversation, and actors in what may be occurring, as if they were immediately present with each other.

We must not be understood, however, as holding the testimony competent upon the above ground, because there is another reason for so ruling, which is conclusive to our minds.

Subject to various qualifications, the old rule, that a party must produce the best evidence within his power to prove a fact, should govern. But as business expands by the aid of new inventions, wider scope must be given to the rules of evidence. There is no need, however, of any departure or innovation in this case, because it is a well settled rule of evidence that the statements of an agent, when acting within the scope of his agency, are competent against his principal.

When one is using the telephone, if he knows that he is talking to the operator, he also knows that he is making him his agent to repeat what he is saying to another party; and, in such a case, certainly the statements of the operator are competent, being the declarations of the agent, made during the progress of the transaction.

If he is ignorant whether he is talking to the person with whom he wishes to communicate or with the operator, or even any third party, yet he does it with the expectation and intention on his part that in case he is not talking with the one for whom the information is intended, that it will be communicated to that person; and he thereby makes the person receiving it his agent to communicate what he may have said. This should certainly be the rule as to an operator, because the person using a telephone knows that there is one at each station whose business it is to so act; and we think that the necessities of a growing business require this rule, and that it is sanctioned by the known rules of evidence.

Judgment reversed.

---

Judge PRYOR delivered the following dissenting opinion:

The question decided in this case is novel and of great importance to the commercial world.

The terms of a contract are attempted to be established by messages alleged to have been forwarded by the one to the other of the parties over a line of telephone extending from Morgantown to Bowling Green.

The appellee, being desirous of showing that the appellant agreed to receive a lot of hoop poles on the bank of Green river within a certain time, applied to the telephone agent at Morgantown to ascertain from Sullivan, the appellant, at Bowling Green, why he did not attend for the purpose of receiving the poles.

The agent at Morgantown telephoned to the agent at

Bowling Green in regard to Sullivan, and sent a message back that Sullivan was present at Bowling Green and would answer for himself.

The message sent by Sullivan was (as Sullivan swears and that fact is nowhere controverted) to the effect that he had not been notified that the hoop poles were ready, and, therefore, did not send to receive them.

The appellee says that the message he received from Sullivan, at Bowling Green, was that the agent of appellant was sick, and for that reason did not send him down. This is denied by Sullivan, and the operator at Morgantown recollects that the message was in regard to the hoop poles, but fails to recollect what it was.

The appellee was then allowed to prove what the agent at Morgantown told him as to the character of the message, and that was "that he failed to send because Allen was sick." He was also allowed to prove by one or two others in the room that the telegraph operator at Morgantown made that statement to the appellee.

It is not pretended that either the appellee or those present heard what was said by the appellant, and all they know, as to the nature of the response made to appellee's inquiry, is what was told them by the operator, who does not himself recollect what the response was.

It is difficult to understand upon what principle this testimony is to be admitted. It can not be said that the operator at Morgantown was the agent of Sullivan, the appellant, at Bowling Green, and for that reason his admissions are binding on the principal. Nor can it be said that he was the agent of Sullivan for the purpose of ascertaining what the contract was, but, on

the contrary, he was the agent of the appellee. The latter wanted this agent to inquire of Sullivan, who, doubtless, did not even know him, why he had failed to take the hoop poles on a named day, and the information was given him by Sullivan, as the latter admits; but this admission appellee says is untrue, because the agent of the appellee told other parties, not in the presence of Sullivan, "that the reason you failed to come was that your man was sick." The agent does not recollect what the message was, but those present recollect what the agent said it was.

A telephone agent who makes an inquiry through the telephone for the benefit of and at the instance of another is not made the agent of the party responding. The relation of principal and agent can not arise further than to admit the testimony of the operator as to what the conversation was. He will not be allowed to close his mouth, and others permitted to testify as to his statements of what passed between him and the party sought to be made liable.

The human voice, by means of this remarkable discovery, may be heard at almost any distance. It requires neither science nor skill to use it as a means of conversation, and the result is that almost any one in the office may be called on to use it for others, and to establish the rule that the declarations of the one receiving the message as to the substance of the response made is competent testimony, is subversive not only of a well recognized rule of evidence, but dangerous in its application.

The operator is not an interpreter in a legal sense. Where persons of different nationalities are unable to

understand each other, they call on an interpreter, and he speaks for them, in their presence; those present hear his statements. This is original testimony; as much so as if the same witnesses were present and heard the parties themselves conversing with each other. There is no analogy between the case of an interpreter and that of a telephone operator. ·Here the parties conversing are miles apart. The one is called to respond to the other. When Sullivan responds, he is responding to Kirkendorf, although through the agency of another. That operator can swear to what the statements were, but his declarations are no more competent than if Kirkendorf himself had talked to Sullivan, and reported to others what Sullivan said. If the operator's statements are competent, so could Kirkendorf's have been if he had made the inquiry and heard the response. That one may constitute another his agent by telephone is not questioned, but that one who responds to an inquiry makes the party to whom he responds such an agent as that the latter's declarations are competent against him, I deny.

To illustrate the position assumed in this case, and leaving the telephone for a brief moment, the appellee sends the operator at Morgantown to Bowling Green to know of Sullivan why he failed to take the timbers. He makes the inquiry of Sullivan and reports to those present in the room at the time, that Sullivan told him it was because "Allen was sick." This Sullivan denies. Is it then competent for Kirkendorf to prove by those present (the operator not recollecting) what report the operator made to them? If Sullivan heard what the operator said to the by-standers it would be competent,

or if it could be inferred that he heard what was said it might be competent, but when you concede that he did not hear, as must have been the case when he was telephoned, it would be clearly incompetent. The operator would be as much the agent of Sullivan in the one case as in the other, but really not the agent in either instance.

Two merchants on one side of Main street propose to buy one hundred barrels of pork from a merchant on the opposite side. The one directs his clerk to telephone the merchant on the opposite side of the street that he will give him ten dollars per barrel for the one hundred barrels. The clerk telephones and reports the response to his principal and those present that the proposition is accepted. The other merchant, who has no telephone, directs his clerk to step to the door and call to the merchant on the opposite side, making the same proposition. He does so and reports an acceptance of the proposition. The merchant refused to deliver the pork in either instance, because he says he agreed to take twelve dollars per barrel and this was his response, and he proves this to have been the response made, by himself and those present. The two clerks fail to recollect what the response was, but it is offered in each instance to prove the report made by the two clerks to their principal, and in this manner contradict the statement of those who heard the response made.

Can such testimony be competent? It is certainly incompetent in the one case and not competent in the other, unless the necessities of trade connected with this new discovery require a departure from a well

recognized rule of evidence. It is at last a question solely as to what the conversation was. Those who heard it are competent witnesses, but their statements to others as to what they heard are inadmissible.

Suppose Sullivan, instead of talking himself, had conversed through the operator at Bowling Green, then the statements of the operator at Morgantown, according to the principal opinion, could be competent to' contradict the oath of the operator at Bowling Green as to the message sent by him. That this could be done, if the operator at Morgantown was called as a witness, is not doubted, but his statements to others as to the conversation should have been excluded. Nor can such testimony be admitted upon the ground that it was the best testimony the appellee, under the circumstances, could produce. Such a rule would open the door for all hearsay testimony. Such agents could easily be found willing to report a conversation to others that they would not swear to themselves.

It is maintained, however, that this operator was an agent, and acting within the scope of his authority, and, therefore, his statements are admissible. What was the scope of his authority? Are the statements of an agent for a special purpose admissible to prove the extent of his authority? If so, it is a novel doctrine. The acts of an agent may be permitted so as to 'presume general authority, but where the power is special and he departs from it, his transaction is void. So if A authorizes B to tell C that he will take his poles on a fixed day, and B tells him that A will take them ten days prior to that time, there being no other agency, he has no power to bind A, and certainly his statements

are not competent to show the extent of the special agency.

The testimony is purely hearsay, and all the reasons induced by consideration of both public and private interests, for excluding that character of testimony, apply with great force to this case.

While I concur in the reversal of the judgment, I must dissent from so much of the opinion as authorizes the admission of this testimony.