## Benge's Administrator v. Eversole.

(Decided November 26, 1913).

### Appeal from Clay Circuit Court.

1. Principal and ·Surety—Notice.—The notice required by section 4668 of the Kentucky Statutes by a surety requiring the creditor of

his principal to sue to the next term of the court under penalty of releasing the surety, must be clear and explicit, and not ambigous; it must be in effect a demand to sue, and more than instructions to dun the principal; and the burden is on the surety to show its nature and terms.

2.   Principal and Surety—Notice.—A mere suggestion by the surety to collect the note, or to put it in the hands of an attorney for collection, is not a sufficient notice to release the surety.

3.   Notice—Presumption of Receipt of Letter.—Where it is shown that a letter was properly addressed and deposited in the mail, postage prepaid, there is a rebuttable presumption of fact that the letter was received as soon as it would be transmitted in the usual course of the mails.

4.   Notice—Presumption of Delivery of Letter.—Where, however, a notice is required by statute, the mailing of a letter giving the notice creates no legal presumption of its delivery, but that fact is proper testimony to be considered, together with other evidence, in determining when it was received; and the jury should not be instructed that a presumption arose from the mailing of the letter, which will prevail unless overthrown by other satisfactory evidence.

5.   Sureties—Notice—Service—Presumtpion.— Under    section    4668 of the Kentucky Statutes the surety is required to show that the notice was served in person; and whenever the surety sends the notice by mail, and the creditor denies that he received it, the presumption ceases and the surety stands with the burden of showing by other testimony that the letter was received.

RAWLINGS & WRIGHT, GEORGE A. YOUNG and G. S. BROCK for appellant.

H. C. FAULKNER, W. E. FAULKNER, H. C. FAULKNER, JR., D. K. RAWLINGS and G. I. RADER for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

On September 12, 1910, Miss E. J. Benge instituted this action against L. P. Garrison, Abner Eversole and James F. Marcum, on a promissory note dated January 15, 1909, by which the defendants bound themselves to pay the plaintiff $1,000.00, six months thereafter.

Eversole answered separately, alleging that he signed the note as surety for Garrison, the principal debtor, who was insolvent, and that on the——day of September, 1909, which was after the maturity of the note, he had given Miss Benge written notice, in person, "to sue on said note, and to put same out for collection, or to send same to him and he would proceed to collect same off of the principal L. P. Garrison for her, and protect himself as surety on said note"; and that by reason of

Miss Benge's failure to do so, he had been released from all liability as surety.

This defense is made under section 4668 of the Kentucky Statutes, which reads as follows:

"A surety, co-obligor, or co-contractor, or one of several defendants to a judgment, may, by notice in writing served in person within the State on the creditor or plaintiff, or if the plaintiff be a non-resident or absent from the place of his residence for the period of thirty days consecutively, upon his agent or his attorney, require him to sue or issue execution, and if the creditor shall not sue to the next term thereafter at which he can obtain judgment, and in good faith prosecute the suit with reasonable diligence, or if the plaintiff shall not, within ten days thereafter, sue out execution, and in good faith prosecute the collection thereof, such co-surety, co-obligor, co-contractor, or defendant, shall be discharged from all liability as such, except for the proper share of such co-obligor, co-contractor, or defendant, according to the then existing condition of the several obligors, contractors, or defendants; and in any joint suit against the whole, or separate suit against him, judgment shall be rendered against him separately, and only for such proper share. The written notice herein required shall not be waived, unless such waiver be in writing; and no waiver of such notice shall be pleaded as a defense, or given in evidence, unless such waiver be in writing."

As the notice was alleged to have been given in September, 1909, and the suit was not filed until September, 12, 1910, which was the third term of the circuit court after the notice was claimed to have been given, the answer constituted a good defense, provided a sufficient notice was given.

The court directed the jury to find for the plaintiff, unless they believed from the evidence that after the maturity of the note Eversole wrote a letter to the plaintiff, which she received, notifying or requesting her to sue upon said note, or to put same out for collection, and that she then failed to sue upon the said note to the next term thereafter of the court at which she could have obtained judgment, and failed to put the said note out for collection before the next term of the court thereafter at which she could have obtained judgment, in which event they were to find for Eversole. The jury having found for Eversole, Miss Benge appealed; and, she having

died since the appeal was taken, it is now prosecuted in the name of her administrator.

Miss Benge was not personally acquainted with Eversole. She resided in Clay County, while he resided in the adjoining county of Laurel. With the exception of a single conversation over the telephone, which he alleges and she denies, their communications were entirely by letters.

Eversole properly assumed the burden of showing he had given the notice required by the statute. On the cross-examination of Eversole, Miss Benge produced the following letter:

"London, Ky., Aug. 28th, 1909.

"Miss E. J. Benge.

I have your letter and message of inquiry about the Garrison notes I have about 15 or 25,000 staves that we will ship at once or as soon as they are delivered and will pay that on the note or notes as far as it will pay. I hardly think it will pay more than one note and I think Garrison will be in shape by October or November to pay the other one as it looks now that he has his business in better shape than he has had it. I cannot say just how he stands with all his creditors, nor how much he owes, but I know he will have considerable money due him on the first brand of his timber. Now if you think best you can put note out as I cannot vouch as to how much he will get, or how he will apply it; but I will pay one note if the staves bring enough to pay it.

"Very truly,
"ABNER EVERSOLE."

On being asked if that was the letter upon which he relied in his answer, Eversole stated that it did not constitute the notice, and that he had written her another letter. Thereupon Miss Benge produced a second letter from Eversole, which reads as follows:

"London, Ky., Sept. 29, 1909.

"Miss E. J. Benge,
"Benge, Ky.

"Dear Madam:

"I have your letter of the 27th instant and note fully what you say about the Garrison matter. I am very anxious to collect this money off from Mr. Garrison. These notes are old enough to be paid and we have no objection whatever for you suing him and attaching or collecting this money. However, I will see Mr. Garrison this week or the first of next and tell him that you must

have some money out of this first brand and if he does not pay I don't see anything else to do only to law him. He tells me that he had written you that he would pay you out of the November brand. You write him that you must have one of these notes settled now.

"Yours very truly,

"ABNER EVERSOLE."

Eversole admitted that Garrison owed him about $5,000.00, and that Garrison paid him something over $4,000.00 out of the brand of logs referred to in these letters.

Miss Benge produced a third letter from Eversole, which reads as follows:

"London, Ky., Oct. 30, 1909.

"Miss E. J. Benge,

"Dear Madam:

"I have your note of the 28th and note what you say about Mr. Garrison. I saw Mr. Garrison on the day I told you and he had the same complaint to make about paying the notes.

"I have shipped the staves but they do not pay all the other notes that was placed in the bank for collection against him as he failed to get as many staves as he thought; and I do not know just what to say to you about this matter, and now I do not know how to advise you to proceed but it does look like some one is going to be left. The log company owes him some considerable money that will be due in November and if you could get an order to the company that he is trading with you could get most all that is due you. If you had your notes in some attorney's hands here I could at all times tell him what to do and how to manage the collection as I will know when the company will owe him and the amount due him and if you will send these notes to G. I. Rader I will see that he does everything necessary for the collection, and that he will be reasonable about the fees and you could write Wm. Lewis the Circuit Judge as to his ability and responsibility. I want these notes settled in some way before January as I am getting my name off of all paper. Now I do not want to advise you wrong in any way but I suggest these matters to you as I know I am in closer touch with these log deals than any one else, as I know I can find out at all times what is due him and when he will have a good brand. Let me know about this and I will do what I can

to secure an order to the Co. for the payment of one note on the next brand and of the other on the second brand and we will act with your advice on these matters.

"Very truly yours,

"Abner Eversole.

"P. S.—

"I have collected most all he owes me and I know he can pay off these notes if looked after closely now, and know you will not be loser by taking my advice along these lines; but as you are not so well acquainted with me I want you to know that I do not want to defraud or deceive you.

"Truly,

"Abner Eversole."

As to his purpose in sending this letter, Eversole testified as follows:

"170—Now is that the letter, Mr. Eversole, that you have been talking about in which you directed the note to be placed out for collection? A. That is one letter that I wrote.

"171—Is this the one that you have been referring to as the notice to sue? A. Well, I wrote another letter besides that.

"172—Say you still wrote another? A. Yes, sir, but I wrote that for the purpose of her bringing suit also.

"173—You wrote this one for that purpose? A. Yes, sir.

"174—This is the letter you referred to, is it, in which you say you notified her in writing, to sue? A. Well, I relied stronger on the other letter—did so on the advice of my attorney.

"175—How is that? A. I relied more stronger on the other letter, the later letter.

"176—What other letter is it you have referred to, Mr. Eversole? A. Well, I wrote her a letter after that.

"177—How long? A. Pretty soon—I couldn't tell just exactly how long.

"178—How long afterwards? A. It may have been that day, I don't remember.

"179—How did you come to write that other letter? A. Well, I told Mr. Rader what I had written her and he thought I ought to write her a stronger letter. She wouldn't sent it on this one or that she might not take my advice about the matters and I put it to her stronger.

"180—If I understand you it is this letter you are relying on giving her notice to sue and not this letter?

A. I relied on that one and the other one more strongly —the way I put it before.''

Eversole kept no copies of any of these letters. Miss Benge testified, however, that she carefully preserved every letter that she ever received from Eversole, and the three letters above given constitute the entire correspondence on Eversole's side of it.

Whenever she produced a letter from Eversole, he was careful to say that while he wrote the letter submitted to him, he had also written another letter; and after Miss Benge had produced the three letters, Eversole still insisted that he had written a fourth letter.

When asked to tell the jury what was the nature and contents of this letter which he says he wrote, and which Miss Benge swore she never received, he answered as follows:

"A. Well, I wrote Miss E. J. Benge to send that note—send them to G. I. Rader or some other attorney for collection. That it was very necessary those notes be put out. I thought Mr. Garrison was going to fail and I wanted them sent to Mr. G. I. Rader or some other attorney for collection.

"Q. Was there any reference to the question of the place?

"A. Yes, sir; I asked her to send them to London on account of these other matters wherein Mr. Rawlings was connected over here. I had been informed about that.

"Q. If I understand you, that was written within a week or ten days after this letter which is October 30th? A. Yes, sir.''

It will be observed that the answer alleges the notice was given in September, 1909, while only one of the three letters was written in that month; and the fourth letter which Eversole now relies upon as containing the notice, was written within a week or ten days after October 30th, 1909, which would place it between November 8th and 10th, 1909, about two months later than the date given in the answer.

It is practically conceded in the argument, and we think it clear beyond question, that neither of the three letters written by Eversole constituted a sufficient notice under the statute to exonerate him as surety; and we do not think that his oral testimony as to the contents of the missing letter is any stronger, since he says he merely

requested her to send the note to Rader, or some other attorney, for collection.

The requisites of a notice that will be sufficient to release a surety are given as follows in 32 Cyc., 104:

"Notice must be clear and explicit, and not ambiguous; and the burden is on the surety to show its nature and terms. If the statute indicates the terms to be used in the notice, a substantial compliance therewith is essential. The notice must amount to a command; it is not sufficient to express a hope, a wish, or a desire; nor will it be a sufficient compliance for the surety to give a hint; to make a request; to urge; to suggest; to advise; or to state that the surety refuses to remain liable, or that he will not pay except under compulsion. The notice must be in effect a demand to sue, and be more than instructions to dun the principal."

In Bowling v. Chambers, 20 Colo. App., 113, a notice from the surety requiring the creditor "to get it settled," was held not to be a sufficient notice to release the surety.

And, in Lawson v. Buckley, 49 Hun., 329, a notice to "make Daniel come to time," was likewise held insufficent.

In Bates v. State Bank, 7 Ark., 394, a direction from the surety to the payee to "put in a train of collection, as he had reason to believe the principal would avoid payment if possible," was not deemed equivalent to an instruction to sue.

In Wilson v. Glover, 3 Pa. St., 404, a notice "to push" the principal, was held to be insufficient.

See, also, German American Bank v. Denmire, 58 Ia., 137; Williams v. Ogg, &c., Lumber Co., 47 Tex. Civ. App., 558.

And in Lockridge v. Upton, 24 Mo., 184, the words, "I will not stand good as security any longer," were held not to be a requisition to sue.

The instruction given in this case did not conform to the rule announced by these authorities.

Notice "to collect" may be sufficient if the language used indicates that the collection must be made by suit if necessary. Stevens v. Chorn, 8 Ky. Opin., 680; Wier v. Dickers' Admr., 11 Ky. L. R., 523. It will be noticed, however, that in none of the letters in this record is there a peremptory direction to collect this note in that way. Each of the three letters is in answer to a letter from Miss Benge, and they are all merely advisory and so-

licitous, at most. And, in view of the fact that during this correspondence Eversole collected for himself more than $4,000.00 from Garrison, it is but natural that he should not have been so peremptory in his desire for Miss Benge to get her money as to require her to sue, since that might have interferred with his own arrangements.

While it was competent for the plaintiff to introduce the three letters which she admitted she had received from Eversole, for the purpose of showing what notice had been given her, the court should have instructed the jury that they did not constitute a sufficient notice under the statute, and that the jury should disregard them in making their verdict.

Appellee insists, however, that since he has shown by his own testimony that the fourth letter, which has not been produced, was properly addressed and mailed to Miss Benge, with postage prepaid, there was a presumption of fact that it was received by Miss Benge as soon as it would be transmitted to her in the usual course of the mails. 16 Cyc., 1065; Railway Officials & Employees Association v. Beddow, 112 Ky., 184.

This presumption, however, is rebuttable; and in case of a denial that the letter was received, and the mailing of the letter is the only evidence of service, the party upon whom the burden is cast of showing that the notice was given, must fail in his proof.

In Bloom v. Wanner, 25 Ky. L. R., 1647, 77 S. W., 930, the tenant, Bloom, agreed to surrender possession of the premises thirty days after the receipt by him of notice in writing. The landlord gave the notice by letters, duly addressed, stamped and deposited in the post-office, and the question was whether the letters were admissible to show the notice to Bloom. In passing upon that question the court said:

"The main ground relied on by him for a reversal is that the trial court erred in admitting as evidence the written notice mailed to him by Nicholson and appellee on the 13th and 18th of August, respectively, and insists that the notice required by the written contract was the statutory notice, which, to be effectual, required personal service upon the appellant. In our opinion the contention of appellant is not well taken. The contract between the parties provided for thirty days' notice in writing. There is no stipulation for a personal service, or that the course provided by the statute should be fol-

lowed. Whilst the mere mailing of the letters to appellant which contained the written demand for the possession created no legal presumption that such letters and notices were actually received by him, it was proper testimony upon the question, and, in the absence of any denial of their receipt by him, was sufficient to warrant the conclusion by the trial court that they had actually been received by him. (Sullivan, &c. v. Kuykendall, 82 Ky., 483, 56 Am. Rep., 901.)''

But in the case at bar the statute above quoted expressly requires that the notice shall not only be in writing, but that it must be served upon the creditor, in person.

In Sullivan v. Kuykendall, 82 Ky., 487, appellants bought certain personal property from the appellee and were to receive it within ten days after notice from the appellee that it was ready for delivery. Appellee gave the notice to Sullivan & Company by a letter which was not received by them until about one week after the property was ready for delivery, and after it had been destroyed. In speaking of the effect of the letter, the court said:

''The mailing of the letter in this instance created no *legal* presumption, but was proper testimony to be considered by the jury, together with the other evidence, in determining when it was received; and they should not have been instructed that a presumption arose from it which must prevail, unless overthrown by other satisfactory evidence.''

Continental Insurance Co. v. Hargrove, 131 Ky., 845, is to the same effect.

The surety is required to show that the notice was served in person; and whenever the surety sends the notice by mail, and the creditor denies that he received it, the presumption of delivery ceases and the surety stands under the statute, with the burden of showing by other testimony, that the letter was received. This Eversole has wholly failed to do.

Under the authorities above cited, Miss Benge having denied that she received the fourth letter which Eversole claims he sent her, there was no service of the notice shown as is required by the statute, and the court should have directed a peremptory instruction for the jury to find for the plaintiff.

Judgment reversed for further proceedings consistent with this opinion.