## Lutz's Administrator v. Inter-Southern Life Insurance Company.

(Decided December 5, 1930.)

340

M. JOSEPH SCHMITT for appellant.

WOODWARD, HAMILTON & HOBSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming.

Prior to his death occurring at a late hour on June 14, 1927, Charles R. Lutz held a limited accident policy issued to him by the appellee and defendant below, Inter-Southern Life Insurance Company, by which it, for the exacted consideration, agreed, among other things, to pay to his administrator $2,500 if his death resulted "directly, independently, and exclusively of *all other causes . . . effected solely through external, violent and accidental means and sustained by the insured: . . . (A) By the *wrecking* or *disablement* of any automobile or motor driven car (Motorcycles and Railway Cycle Cars Excepted) or horse-drawn vehicle not plying for public hire in which the insured is riding or driving or by being accidentally thrown from such *wrecked* or *disabled* automobile or vehicle." (Our emphasis.)

The death of the insured was produced in this way and manner: He owned a camp or summer house on the Ohio river about twelve miles west from the city of Louisville, and on the day referred to he and his friend, Harry Higbee, drove to it in a one-seated coupe, which was comparatively new, and was the property of the Clifton Lumber & Coal Company, for which both the deceased and Higbee worked, and both of them had theretofore used it in discharging their duties to the company. Near 10 o'clock p. m., the two left the camp on their return to their homes in the city, and while traveling east on Broadway street at a point where it is crossed by Thirty-First street a long freight train was crossing on a railroad track located at that point and the gates for the blocking of the street were down and the automobile stopped. Some few automobiles were in front of it, and when the train passed and the gates began to rise, the waiting automobiles started up and Mr. Higbee, who

was on the left side at the wheel, likewise slowly started the one he was driving. Just before stopping at that place for the train to pass, the deceased dropped a cigar that he was smoking and began to search the bottom of the car as well as the seat upon which he was sitting to find it. The end of the seat extended out partly over the door space, and the door shutter swung on hinges attached to the front end of the automobile, making the latch located above a part of the end of the seat occupied by deceased. The last time Mr. Higbee noticed him, which was immediately before starting, he was stooped over and apparently endeavoring to locate the lost cigar between the door shutter and the end of the seat; but Mr. Higbee's attention was directed in front for manifest reasons, and as he started forward he heard a sound and looked and discovered that the door to the automobile on the side where the deceased was riding was opened and he was out of the car. Immediate investigation developed that he had fallen on the pavement and injured himself in such a manner as to produce his death within a short time thereafter.

The appellant and plaintiff below, Frank Reiss, qualified as his administrator and brought this action in the Jefferson circuit court against defendant to recover from it a judgment for $2,500, upon the ground that the death of his decedent came within the above-inserted provisions of the policy, i. e., that they were produced through external, violent, and accidental means resulting, not from the "wrecking" of the automobile, but from its "disablement" which caused him to be accidentally thrown from it as a disabled one within the terms of the policy. The answer made the issues, and upon trial the court at the close of the introduction of all the evidence sustained defendant's motion for a peremptory instruction in its favor, followed by a judgment dismissing the petition, and from which rulings the plaintiff prosecutes this appeal.

Mr. Higbee testified that he had used the automobile, which had been recently purchased by his company, on a number of occasions prior to the fatal one here involved, and that there was nothing the matter with the door shutter or its latch, or with any of its parts, and that he examined it on the morning after the accident and found it in the same perfect condition. However, a Mr. Mayes, a professional chauffeur, who was at the time of the trial not in the employ of the company for which Mr.

Higbee and the deceased worked, but a driver of automobiles for the Louisville Taxicab & Transfer Company, testified that he had driven the one here involved for the deceased after it was purchased and prior to the accident, and that the latch or catch on the right door shutter was slightly defective in a way that he attempted to explain but which we will confess we do not understand. But, whatever may have been its true nature, he stated that the defect made it more difficult for the shutter to fasten when closed and if not fastened it would easily open. The door was shut when Higbee and the deceased left the camp and remained so until it opened when the deceased fell out of the automobile. The witness also said that on the morning following the accident he, of his own accord, with a hammer and a chisel, repaired the defect to the latch that he testified to and which he endeavors to create the impression was done by him before it was examined by Mr. Higbee on the same morning when the latter found nothing the matter with it.

The witness also testified that when the latch to the door was caught while the defective condition existed, it was equally difficult to open the door; or, in other words, it would then be more difficult to open it than if the catch had been in perfect condition. So that, if the latch was caught in the notch provided for it when the parties left the camp, then the defect did not contribute to the undue opening of the door from which the deceased fell. But, eliminating all such questions, we will proceed to determine whether the accident, occurring in the manner described, and conceding that the latch was defective, came within the purview of the language of the policy describing the character of accident for which liability was assumed.

It will be observed that the death must be effected by means that were external, violent, and accidental, brought about "by the *wrecking* or *disablement* of any automobile . . . in which the insured is riding . . . or by being accidentally thrown from such *wrecked* or *disabled* automobile. (Our emphasis.) It is not claimed in this case that there was any *wrecking* of the automobile, nor is there any contention (or any evidence to establish) that anything happened on the occasion of the accident to produce either a wrecking of the automobile or anything that in any manner *disabled* it. The use of the word "disablement" in the policy, as descriptive of the character of accident intended to be embraced there-

in, was no doubt for the purpose of providing indemnity for an injury to an inmate of an automobile in a catastrophe the consequences of which did not completely wreck the automobile, but only injured it to the extent of disabling some parts of it, and which consequences were short of and less comprehensive than a wrecking of it. To uphold the contended for construction by counsel for plaintiff (i. e., that the defect, if any, in the lock or catch to the door, and which had existed for some time, was such a disablement as was contemplated by the policy) would make its language cover almost every accident that could happen to an inmate of an automobile whether or not it was in motion and regardless of any collision or other producing external cause. If an inmate should be pricked by a splinter from some of its parts from which serious consequences followed, then, under counsel's contention, the accident would be covered by the language of the policy now under consideration, because the existence of the splinter would constitute a "disablement" of that particular part of the automobile, although such disablement had a prior existence. Likewise, a similar conclusion would follow if the door shutters to the automobile had been removed and the spaces for them had been left completely open and an inmate fell therefrom as a result of his own maneuvering and not as a result of any violent and external happening to the automobile, or even from any negligence in its operation. We cannot believe that it was the intention of the parties to the policy contract for the language under consideration to include any accident other than one resulting in a total wreckage of the automobile, or in its partial wreckage amounting to no more than its disablement, and which contemplated that such results should be produced by the same accident that produced the injury or death of the policy holder and which resulted from such simultaneous wreckage or disablement. We are aware that the thoroughly established rule is to construe ambiguous language in insurance policies against the insurer and in favor of the insured, but before that rule may be invoked it must be found that the language is ambiguous, which we do not find to be true in this case.

In arriving at such conclusion we have eliminated the fact, as hereinbefore intimated, that it is extremely doubtful if the proof was sufficient to show that the accidental death of the deceased resulted from

344

the alleged defect to the door shutter fastening hereinbefore referred to, if, indeed, there was any such defect at the time, since the extent of the evidence on that issue was that the accident *might* have happened because of such defect, but that if the door was fastened when the parties left the camp (evidenced by the fact that it remained shut throughout the trip up to the place and time of the accident) it would be correspondingly difficult for it to open. In the same connection it should also be remembered that the deceased, when last seen by Mr. Higbee, was searching and fumbling around the end of his seat in the neighborhood of the door latch to find his cigar and may have unlatched the door, either unintentionally or purposely, for the purpose of finding it. We have concluded, however, to rest the opinion entirely on what we conclude is the correct interpretation of the language of the policy.

Wherefore, the judgment is affirmed.