## Federal Life Insurance Co. v. Sivels.

(Decided Nov. 27, 1934.)

WHEELER, WHEELER & SHELBOURNE for appellant.

ADRIAN H. TERRELL and C. C. GRASSHAM for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

On March 16, 1928, the Federal Life Insurance Company issued to James B. Sivels an insurance policy

which insured him against death, dismemberment, or disability resulting within 60 days from the date of the accident directly and independently of all other causes from bodily injury sustained through external and accidental means for the amounts and in the manner set forth in parts I, II, and III of the policy.

Part II, in so far as pertinent, provides as follows:

"The Company will pay for loss of life $2000 * * * sustained by the wrecking or disablement of any vehicle or car operated by any private carrier or private person in which the Insured is riding or by being accidentally thrown therefrom. This includes persons riding in or driving automobiles or any other motor driven or horse drawn vehicles."

Provisions of the policy relating to renewals and accumulative benefits provide, among other things, that:

"Each full year's renewal of this Policy shall add ten percent to the specific losses as set forth in Parts I, II and III until such accumulation reaches fifty percent; there being no further accumulations after the fifth renewal."

Insured died on October 7, 1932, and thereafter Minnie Sivels, his widow and beneficiary, named in the policy, instituted this action alleging that on March 5, 1929, and·in advance of the expiration of the date of the first annual period of the policy, insured paid the renewal premium, and in like manner thereafter annually renewed the policy by the payment of the premium, and further alleged in substance that on August 24, 1932, and while the policy was in full force and effect, insured, while traveling in his automobile on a highway near Mayfield, Ky., sustained bodily injuries through accidental means ·by the wrecking of his automobile and by being accidentally thrown therefrom when the automobile ran off the road and into a ditch; that as a result of such accident insured received bruises and injuries to internal and external organs of his body, and from which bodily injuries, and as a direct and proximate result thereof sustained solely through accidental means within the contemplation of the provisions of the policy and directly and independently of all other causes, died within 60 days thereafter; that, under the provisions of the policy relating to accumulative benefits and because of the renewals as set out in the petition, the amount payable had been increased 10 per cent. or $200, an-

nually for four years; the total amount of such accumulations being $800 at the death of insured. She prayed for judgment in the sum of $2,800. Necessary allegations as to notice and proof as provided under the policy were made.

By answer the company traversed the material allegations of the petition and set up certain affirmative defenses, which for reasons presently indicated it will be unnecessary to discuss.

Trial before a jury resulted in a verdict followed by a judgment finding for plaintiff in the sum of $2,800, and the defendant is appealing.

The question as to giving notice and furnishing proof as provided in the policy is not in dispute. At the conclusion of all the evidence, appellant offered an instruction directing the jury to find for it. This instruction was refused, and this action upon the part of the court is one of the principal grounds relied on for reversal.

Insured was about 70 years of age. Because of a provision in the policy that it shall not cover any person under the age of 10 years nor over the age of 70 years, appellant, in avoidance of liability under the policy, attempted to plead that at the time of the alleged accident appellant was over 70 years of age. Considerable proof bearing on this question was introduced by the respective parties, and much of the briefs are devoted to it; however, as we view the matter, a correct determination of this appeal may be reached without reference to that question.

The evidence shows that, shortly before the alleged accident, insured and his wife made a trip from their home at Paducah, Ky., to Paris, Tenn., to visit his daughter by a former marriage. They were accompanied by his nephew, R. S. Simmons. On their return home, and when some miles out of Mayfield, one of the rear tires of the automobile blew out, causing the car to swerve across and to the left side of the road. Mr. Simmons was the only witness to give any evidence concerning the injuries to or disablement of the automobile, and we shall quote the most material and pertinent part of his evidence on direct examination relating to that question:

"Q. When you were returning to Paducah,

what, if anything happened? A. Well we had a puncture on the way back, one of the back tires blew out and that caused the car to swerve to the side of the road. He was driving the car and he got out of the car before it stopped and walked around the car. I fixed the tire myself. * * *

"Q. Did he fall out of the car? A. Not exactly, he just slid out of the car before it got stopped. * * *

"Q. Tell the jury what happened when he slid out of the car. What part of the car did he slide out of? A. When he slid out of the car, he slid out by the wheel. He was facing north and before the car stopped he turned the switch off and put on his brakes and got out this way [indicating] and went around the car.

"Q. Did he fall on the fender? A. No Sir, he just slid out of the car this way [indicating].

"Q. What happened after that? A. He walked around the car and I took the tire off and fixed it myself. * * *

"Q. Go ahead and tell the jury what you saw when this car swerved off the road. Or when the accident happened. A. The car was going about 30 miles an hour and when the back tire blew out, naturally it made the car swerve and he turned the switch off and he had his foot on the brakes, and before the car stopped still he slid out of the car this way [indicating] and then the car was stopped by that time, and he walked around the car and I took the tire off and fixed it myself.

"Q. Why did you drive the car back to Paducah? A. He was complaining of—

"Q. What was he complaining of? A. He did not say what it was about.

"Q. What part of his body was he complaining of? A. He never said to me.

"Q. What was his complaint? A. He never complained of any certain thing to me, he only complained of feeling bad and I drove the car back to Paducah, after I had fixed the tire."

The evidence shows that upon the arrival of the party in Paducah Mr. Sivels was suffering intense pain,.

and a physician was called that night or the next morning. His stomach and abdomen were swollen and he was unable to pass urine, and therefore had to be catheterized regularly. There was some evidence as to discolorations about the abdomen, but the doctors testified that they could not determine whether this was caused by bruises or by the diseased condition. There was some evidence of a bruise or injury on the hip, and there was a large knot or lump immediately back of the urinary organs, which in the opinion of the doctors was caused by some traumatic injury. There is evidence that previous to the trip to Tennessee Mr. Sivels' general health was good. According to the evidence of the daughter whom he visited in Tennessee, he was sick when he left her home to return to Paducah.

It is argued by counsel for appellant that the evidence utterly fails to establish (1) that the automobile was disabled within the meaning of the provisions of the policy, and (2) that, if it was so disabled, the evidence fails to establish that the insured's alleged injuries were sustained thereby, or that he was accidentally thrown from the automobile by reason of its disablement.

In the case of Federal Union Life Insurance Co. v. Richey's Adm'x, 256 Ky. 262, 75 S. W. (2d) 767, decided October 12, 1934, the insured was riding to his work on a truck when another motor vehicle came in collision with it and so lifted it as to raise its left wheels about 18 inches from the ground. The insured was thrown from the truck and sustained injuries from which he died. The only visible damage to the truck was but a slight dent in or bending of a fender, and, when the left wheels were let down, it operated as usual by its own power. It was held that this was a disablement of the truck within the meaning of the provisions in a policy similar to the one under consideration. The opinion took cognizance of the general rule that ambiguous words in an insurance contract will be construed in favor of the insured and quoted with approval from the opinion in Lutz's Adm'r v. Inter-Southern Life Insurance Co., 236 Ky. 340, 33 S. W. (2d) 20, 22, where, in discussing the meaning of the word "disablement" as used in a policy of this character, it was said:

"The use of the word 'disablement' in the policy, as descriptive of the character of accident

intended to be embraced therein, was no doubt for the purpose of providing indemnity for an injury to an inmate of an automobile in a catastrophe the consequences of which did not completely wreck the automobile, but only injured it to the extent of disabling some parts of it, and which consequences were short of and less comprehensive than a wrecking of it. * * *

"We cannot believe that this was the intention of the parties to the policy contract for the language under consideration to include any accident other than one resulting in a total wreckage of the automobile, or in its partial wreckage amounting to no more than its disablement, and which contemplated that such results should be produced by the same accident that produced the injury or death of the policyholder and which resulted from such simultaneous wreckage or disablement. We are aware that the thoroughly established rule is to construe ambiguous language in insurance policies against the insurer and in favor of the insured, but before that rule may be invoked it must be found that the language is ambiguous, which we do not find to be true in this case."

A comparison of the two cases will reveal that the evidence for appellee conduces to establish with more certainty a disablement of the automobile as defined in the Lutz Case than was done in the Richey Case. Here there was an actual impairment of, and injury to, a part of the automobile which temporarily at least incapacitated it from proceeding in an ordinary and effective manner under its own power. Notwithstanding our opinion that there was a disablement of the Sivels automobile within the meaning of the quoted provision of the policy, this is not a matter of vital concern, since, as indicated in the quoted excerpt from the Lutz Case and cases hereinafter cited, appellee in no event was entitled to recover unless it be established that the disablement of the automobile was the direct and proximate cause of the injury which resulted in the death of insured. There is no evidence that the blowout of the tire or the swerving of the automobile to the opposite side of the road was attended with any such violent jerking or lurching as was calculated to cause strain or injury to insured or to the occupants of the car. There is likewise an absence of any showing that insured was

thrown against the steering wheel, door, or any other part of the automobile or that he was thrown therefrom. It is merely shown that, when or immediately before the automobile came to a stop, insured "slid" out and walked around to the rear. The witness Simmons testified that he did not fall, and there is nothing in his evidence tending to show that any part of his body came in such violent contact with any part of the automobile as would cause any bruise or traumatic injury. There is an utter absence of evidence to show that the alleged or any injuries to insured resulted from the disablement of the automobile. A recovery cannot be had upon mere speculation or supposition as to the cause of the alleged injuries or death of insured, but, in order to impose liability upon the company, it is necessary to show some causal relation between the disablement of the car and the death of insured. Inter-Southern Life Insurance Co. v. Foster, 248 Ky. 481, 58 S. W. (2d) 668, and cases therein cited.

Because of failure of proof that insured's death was the proximate result of injuries to or disablement of the automobile, appellant's motion for a directed verdict should have been sustained.

Judgment reversed for proceedings consistent with this opinion.