# Inter-Southern Life Ins. Co. v. Cochran.

(Decided May 28, 1935.)

WHEELER, WHEELER & SHELBOURNE for appellant.

W. A. BERRY for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Mrs. Mattie Cochran, as beneficiary in a policy issued to her brother John Lenihan by the Inter-Southern Life Insurance Company insuring him against death or disability resulting directly, independently, and exclusively of all other causes from bodily injury effected solely through external, violent, and accidental means and sustained in certain ways or manner provided in the policy, has recovered judgment for the sum of $3,000, and the company is appealing.

The policy is one of those issued by the company through an agreement with the Courier-Journal to its regular readers served by authorized carriers or by mail. The policy provides indemnity for death or injuries sustained as above indicated "by the wrecking or disablement of any automobile or motor driven car * * * not plying for public hire in which the insured is riding or driving. * * *"

One of the standard provisions reads:

"The insurance under this policy shall not cover any person under the age of ten years nor over the age of seventy years. Any premium paid to the Company for any period not covered by this policy will be returned upon request."

And under the heading of general provisions, among other things, it is provided:

"No assignment of this policy shall be valid unless approved by an executive officer of the Company and an indorsement shall be made thereon."

In the petition it is alleged that insured died as the result of an injury sustained on August 2, 1931, by the

wrecking or disablement of an automobile in which he was riding. It was further alleged, in substance, that plaintiff had been made and was beneficiary under the policy by a beneficiary designation signed by the insured making the policy payable to her, which beneficiary designation had been forwarded to the company and accepted, recognized, and agreed to by it.

The company filed a special demurrer to the petition on the ground that the policy provided, "Indemnity for loss of life provided in this policy shall be payable to the estate of the insured," and that under that provision none other than the personal representative of insured had a cause of action under the policy. It also filed a general demurrer.

In addition to a general denial of the allegations of the petition, the company by a second paragraph of its answer set out the quoted provisions of the policy respecting the age of the insured and alleged that John Lenihan was born on February 13, 1861, and became 70 years old and ceased to be entitled to benefits and indemnity under the policy on February 13, 1931; that it did not know insured had passed the age of 70 and otherwise would not have renewed his policy, and on request would have refunded such portion of the previous year's premium as had been paid from February 13, 1931, to July 13, 1931; that the estate of insured was entitled on request to the premium covering that period and the company was willing to and would reimburse the estate upon proper request. It pleaded and relied upon such quoted provisions a complete bar and defense to the right of plantiff or any one else to recover as sought in the petition.

In the third paragraph it set up and pleaded the provisions referred to in the special demurrer as a bar to plaintiff's right to prosecute that action in her own name or to recover under the policy sued on and alleged that the personal representative or administrator of the insured was a proper and necessary party plaintiff and the only person authorized to maintain an action on the policy.

In the fourth paragraph it set out the provisions of the policy, and alleged that insured's death did not result from injuries sustained in the way and manner provided in the policy, and that the automobile in which

he was riding was not wrecked or disabled; that he died from physical infirmity and disease and not solely from bodily injuries effected through external, violent, or accidental means.

By reply, as amended, plaintiff traversed the affirmative allegations of the answer and set up the quoted provisions relating to the age of insured and alleged that if, as claimed by defendant, John Lenihan was born on February 13, 1861, defendant at all times knew his age and waived that provision of the contract and was estopped from pleading and relying upon same. The issues were completed by a traverse of the affirmative allegations of the reply as amended, and trial before a jury resulted in a verdict for plaintiff followed by the judgment appealed from.

The evidence so far as pertinent will be discussed in connection with the grounds relied on for reversal. The first ground argued by counsel for appellant is a challenge to the right of appellee to maintain this action. It is contended that under the quoted provisions of the policy it was necessary for her to establish: (a) A written assignment designating Mrs. Cochran as beneficiary; (b) the approval of that change by an executive officer of the company; (c) an indorsement upon the policy evidencing the change and approval. Attached to the policy is a "beneficiary designation" which, omitting the signature of insured and the witnesses thereto, reads:

"As the policy does not provide for a beneficiary other than the insured, if you desire that any individual receive this insurance, that is, be the beneficiary of the death benefit in your policy contract, please properly fill in and sign the form below in duplicate and attach one copy securely to the policy and send the other copy to the Inter-Southern Life Insurance Company Louisville, Kentucky.

"To whom it may concern:

"This is to certify that I, John Lenihan (Your name on this line) wish to make my Sister (State relationship to beneficiary such as wife, husband, sister, etc.) whose name is Mattie Cochran, wife of William T. Cochran (Fill in name of party you wish

to leave insurance to, beneficiary in this Inter-Southern Life Insurance Company Travel Accident Pedestrian Insurance Policy Number ——— (Copy number of policy)

"Done at Paducah, McCracken County, Kentucky (Name of town or community, county and State)

"This 26 (Day) day of July (Month) 1929 (Year)

"F535          Signed ————————.
                    "(Write your full name)"

Mrs. Elizabeth Martini, a close friend of Mrs. Cochran and John Lenihan, testified that she was present and saw John Lenihan fill in the blanks and sign this paper, and saw her husband sign it as a witness; that it was executed in duplicate and one copy was placed in a stamped envelope addressed to the Inter-Southern Life Insurance Company, Louisville, Ky., and that the envelope bore a return address; that she accompanied Mrs. Cochran to the post office and saw her post the letter. She was asked if Mr. Lenihan said where he got the papers, and replied, "No, I think the insurance man gave them to him. I know he said he had to sign this and make her beneficiary and one had to be mailed back."

The instructions at the head of the form filled out and attached to the policy as well as the instructions under the blanks to be filled in and the number at the foot clearly indicate that this form was furnished and sent out by the company.

Mrs. Cochran also testified that she mailed the envelope containing a copy of the beneficiary designation; that it was properly addressed to appellant and bore the proper amount of postage and a return address. George M. Hill, Jr., who was employed in the legal department of appellant from 1929 until 1932, testified that he had access to any file or claim record necessary to his legal work, and that when notice of the death of John Lenihan was received, the files in that particular case were assigned to him and that there was no record of any change in the beneficiary in the file which he received; that he examined all files pertaining to that claim and found no such paper.

Counsel for appellant quote from Farley v. First National Bank, 250 Ky. 150, 61 S. W. (2d) 1059, 1061, wherein it was said:

"The provision requiring the return of the policy to the insurer and the indorsement thereon of the change of beneficiary is intended only for the benefit of the insurer, and may be waived by it."

It is urged that the requirement in this policy respecting the change of beneficiary was intended only for the benefit of the company, and, notwithstanding the right given might be waived by the company, it did not elect to waive it.

In the Farley Case, it is held in effect that where the insured has done substantially all he is required to do under the provisions of a policy to effect a change in the beneficiary and that mere ministerial acts of the insurer's officers and agents only remain to be done, the change will take effect. To the same effect, see Hoskins v. Hoskins, 231 Ky. 5, 20 S. W. (2d) 1029, Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031, and other cases cited in the Hoskins opinion. This has come to be known as the "substantial compliance rule." While the provisions invoked may be for the benefit of the insurer, it does not operate to relieve it of all liability, but merely protects it from payment to persons not entitled to the benefits under the policy.

Reverting again to the form furnished for the designation of the policy, there is no requirement that the policy be sent in, but merely that the forms be properly filled out and signed in duplicate; one copy attached to the policy and the other sent to the company. It is apparent that insured had done substantially all he could do to effect the change of beneficiary, if, in fact, he did not follow literally the instructions of the company.

The positive evidence for appellee that the envelope containing the instrument executed by insured designating her as beneficiary, properly addressed and mailed with the postage prepaid, raises a presumption, rebuttable however, that it was received by appellant as soon as it would ordinarily be transmitted to it in the usual course of mail. Benge's Adm'r v. Eversole, 156 Ky. 131, 160 S. W. 911; Railway Officials' & Employes' Association v. Beddow, 112 Ky. 184, 65 S. W. 362, 23 Ky.

Law Rep. 1438. And the negative evidence of Mr. Hill that he did not find such paper in the files furnished him was not sufficient to overcome the presumption. In the circumstances, we are constrained to give effect to the paper designating appellee as beneficiary under the policy.

It is next argued that there is no evidence to show that the automobile in which insured was riding and in which he sustained his alleged injuries was disabled. Appellee and a neighbor who was visiting her testified that on the day of the accident insured came to her home and indicated that he wanted to put his automobile in the garage; that they went out and opened the doors for him and that in attempting to drive in, the automobile struck the side of the door, rebounded, and then went forward and struck it again. They stated that a bumper on the car was broken and hanging down; that they were unable to move the automobile and a mechanic was sent for. Without going into detail, the evidence clearly indicates that the automobile was so damaged that it could not be operated until repairs were made. There is evidence that three witnesses tried to move the automobile, but could not, and because of damage and impairment to parts of the automobile it could not be moved or operated under its own power. It is therefore manifest that it was disabled within the meaning of the provisions of the policy. Federal Life Insurance Co. v. Sivels, 256 Ky. 520, 76 S. W. (2d) 608; Federal Union Life Insurance Co. v. Richey's Adm'x, 256 Ky. 262, 75 S. W. (2d) 767; Lutz's Adm'r v. Inter-Southern Life Ins. Co., 236 Ky. 339, 33 S. W. (2d) 20.

It is next urged that the accident was not the direct, independent, or exclusive cause of the death of insured. On this question there is a sharp conflict of evidence. Appellee and her neighbor who saw the automobile strike the side of the garage door testified that insured was thrown violently against the steering wheel; that he became violently ill and vomited and had to be helped from the automobile and into the house where he was put to bed. A physician who was called, testified that he was suffering intense pain. The fact that he had struck the steering wheel with considerable force was evidenced by swelling and bruises in the region of the stomach. He returned to his home at Mayfield late in the afternoon and in a day or two was taken to the

hospital, where he died on the 19th. A post mortem revealed a number of small stones in the gall bladder and duct. Dr. Bradley, the first physician called, testified that he relieved the pain and advised insured to go to the hospital. He gave as his opinion from the nature of insured's injuries and the report of the hospital physicians that he died of peritonitis superinduced by the injuries sustained in striking the steering wheel. Dr. Prior one of the hospital physicians who attended insured, testified that he assisted in holding the autopsy, and that the cause of death was inflammation of the liver or gall bladder and peritonitis around it. He further testified that if the injuries sustained by insured caused the inflammation of the liver and gall bladder and the peritonitis around it, then it was the direct cause of insured's death. Dr. Walters, also a physician at the hospital and a partner of Dr. Prior's, testified that he assisted in the post mortem and found an abscess on the gall bladder and the usual inflammatory processes that accompany abscesses or empyema of the gall bladder; that the gall bladder and the canal and cystic duct were filled with gall stones; that they also found numerous adhesions from a previous operation. It appears in evidence that a number of years ago insured underwent an operation for gall trouble. Dr. Walters testified that abscess of the gall bladder was the cause of the death of insured, and gave as his opinion that it was not caused by trauma. Without going into further detail, it may be said that, on this as well as on all other questions in issue, there was a conflict in proof, and on the whole it is apparent that there was evidence to support the jury's finding that insured's death resulted from injuries sustained as alleged in the petition.

As further ground for reversal, it is urged that insured was over the age of 70 when he sustained his injuries, and here again we are met with the same conflict in evidence. Insured was the oldest of a large family of children. The next oldest child, a brother, testified concerning the record of the ages of the children as kept in the family bible and that this showed the date of insured's birth to be February 13, 1862. Other members of the family testified to the same effect and as to their understanding of insured's age which would indicate that he was born in 1862. Friends and

acquaintances also testified as to statements made by insured to them concerning his age which would show him to be under 70 at the time he sustained his injuries. Some of the witnesses testified as to statements made by insured at a birthday dinner given in his honor by a sister. One or two witnesses testified that insured made a statement that he advanced his age when a young man in order to get employment. There is evidence that a sister of appellee stated that she tore the family record out of the family bible in order to thwart appellee's effort to collect the insurance, being dissatisfied with the way in which he had disposed of his property. She and others testified that the record showed the date of insured's birth as February 13, 1861. This sister admitted that she had torn this record out of the bible and put it away for the purpose of preserving it and had been unable to find it, but she denied that she had any intention of defeating appellee's claim. We find in the record a photostatic copy of an application to the Equitable Life Assurance Society made by insured in 1888. In this his date of birth is given as February, 1861, and the same date is given in a copy of an application for a pension made to a telephone company for which he was working. While these records would show insured above 70 years at the time he sustained his injuries, there are other records in evidence which indicate that he was only 69 at the time. Policies similar to the one sued on are issued upon application in which the age of the applicant is given, but evidently Mr. Hill or others who examined the files failed to find such an application, since it is not in the record. As we see it, the evidence on this question is about equiponderant, and to say the least this question was submitted to the jury by proper instruction, and there is ample evidence to support the finding that insured was under the age of 70 at the time of his death.

It is further argued that the verdict is not supported by the evidence, but as will be seen from our recital of the substance of the evidence, there are conflicts on every issue, and after all, it was a question of the credibility of the witnesses and the weight to be given their evidence, and, therefore, matters to be determined by a jury whose verdict should not be disturbed, where as in this instance, there is evidence of probative value to sustain the jury's finding.

Finally, it is argued that the verdict is contrary to the instructions. Concerning this ground it is pointed out that the court in the instruction defined the word disabled as being "such injury to the automobile as rendered it incapable of being operated until the injury was repaired," and it is insisted that there was no evidence to show that the automobile was injured to the extent that it had to be repaired. This again involves a question of the credibility of the witnesses, since, as already indicated, witnesses for appellee testified to injury and damage to the automobile that would clearly indicate that repairs had to be made before it could be operated. After defining the words "wrecking and disablement" as used in the instruction, the court, in instruction B, authorized a finding for appellant if the jury believed insured was born on February 13, 1861, and instruction C authorized a finding for appellant unless the jury believed from the evidence that insured's death resulted directly, independently, and exclusively from bodily injuries sustained through external, violent, and accidental means by the wrecking or disablement of the automobile in which he was riding at the time he sustained the alleged injuries. By instruction X the jury was authorized to find for appellee if they believed from the evidence that insured's death resulted directly, independently, and exclusively from bodily injuries sustained through external, violent, and accidental means by the wrecking and disablement of the automobile mentioned in evidence, and should further believe that at the time of the accident he was under 70 years of age. These instructions properly submitted to the jury the issues made by pleading and proof.

Judgment affirmed.