## Home Insurance Company of New York v. Roll.

(Decided February 13, 1920.)

### Appeal from Muhlenberg Circuit Court.

1. Evidence—Mailing and Delivery of Mail Matter—Presumption.—Where a letter is properly addressed and mailed, with postage prepaid, there is a presumption that it was received by the addressee as soon as it would be transmitted to him in the usual course of the mail. This presumption may be rebutted by evidence that it was not in fact received or not received in the ordinary course of the mails.

2. Evidence—Mailing and Delivery of Mail Matter—Burden of Proof.—Where there is a denial that a letter was received and the mailing of the letter is the only evidence of its receipt the party upon whom the burden is cast of showing that it was received, must fail in his proof.

3. Evidence—Mailing and Delivery of Mail Matter.—The mailing of a letter at Greenville, Ky., on November 8, is a relevant circumstance from which, if not sufficiently rebutted, an inference is

fairly deducible that said letter was received in Chicago at its address on the following day.

4. Insurance—Provision in Policy As to Filing of Suit—Waiver.— A provision in a fire policy that no suit shall be brought thereon until sixty days after loss, or until after proofs are furnished by the insured, is waived where the insurer denies liability under the policy and refuses to pay the amount of loss.

5. Insurance—Interest on Amount of Loss—Waiver.—Insured is entitled to interest on the amount payable under the policy from the expiration of the limit provided in the policy for the furnishing of proofs, but where the insurer denies liability and refuses to pay any sum under the policy this is a waiver of the limitation and interest will run from the date of the loss.

GORDON & LAURENT, FRANK M. DRAKE and TAYLOR, EAVES & SPARKS for appellant.

W. C. JONSON and HUBERT MEREDITH for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

By its policy dated October 27, 1916, appellant, among other things, insured appellee's dwelling and certain grain and seed in the respective sums of $800.00 and $300.00, issuing what is known as a "Farm Installment Policy" to cover same. One-fifth of the premium was paid in cash, the balance payable in four equal annual installments, represented by notes, executed by appellee and payable November first of each year.

Appellee's dwelling and a certain quantity of seed were destroyed by fire early in the morning of November 7, 1917, and appellant having declined to admit liability under the policy, suit was filed thereon and a trial resulted in a verdict in appellee's favor for $1,022.50, to reverse which judgment this appeal has been prosecuted.

The policy contains the following provisions: " . . . and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proofs of the loss have been received by this company in accordance with terms of this policy. But it is expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned while any installment of the installment note, given for premium upon this policy, remains past due and unpaid; or while any single payment, promissory note (acknowledged as cash or otherwise),

given for the latter or any portion of the premium remains past due and unpaid. [Payments of notes and installments thereof must be made to the said Home Insurance Company at its western farm department office in Chicago, Illinois, or to a person or persons specially authorized to collect the same for said company.''

During the month of October, 1917, contemplating insurance on a new barn then in process of erection, insured requested insurer's agent to inspect the barn to see if the policy could be so changed as to include it. Having, about the 30th of October, received a negative answer insured claims that on November 1, she mailed to insurer's office in Chicago her personal check in payment of the installment note due on that day, accompanied by a letter enclosing same, also the notice received from the company about the middle of October calling her attention to the maturity of the note. These papers she says were enclosed in a white envelope of the Green River Lumber & Tie Company, properly stamped and addressed to the company, and which was mailed at the post office at Greenville, Ky. November 2 insurer's agent met appellee's husband on the street and asked him if they had sent their premium to the company, and when answered in the affirmative the agent replied, ''all right.''

On the morning of the fire (November 7, 1917), and before noon of that day, insured wrote the company notifying it of the loss. This letter insured states was enclosed in a blue self addressed envelope, which had been received from the company. Thereafter she received a letter from the company, under date of November 13, stating that on the 12th of November, they had received notice from their agent that the property covered by their policy had been destroyed by fire November 7, the company notifying appellee that at the date of the fire the installment premium being overdue and unpaid it was not liable for any loss or damage, and thereupon enclosed the company's check for the amount of the installment. The company in said letter denied any liability in any amount on account of the loss. This check was later returned to the company.

Various officers and employes of the company testified, in effect, that the only communication received from the insured was on November 9, when they received the blue envelope above referred to containing the notice of the maturity of the installment note and the insured's

check dated November 1, 1917, in payment thereof; that up to that date they had never at any time received any other letters or communication from the insured. The blue envelope was filed in the record and bears this postmark: "Greenville, Ky., Nov. 8, 1917, 10 a. m.," and endorsed in the upper left-hand corner is the number of insured's policy, which it is admitted was written there by her husband. The ordinary time for the carriage of mail from Greenville, Kentucky, to Chicago, Illinois, is one day, and a letter mailed, at the former city, before noon should reach Chicago before noon of the following day. Having no knowledge of the fire, the check, when received, was duly transmitted to the company's cashier, proper entry made in its books of the receipt thereof; the check was deposited November 10, and according to the perforation on the check, it was received and charged to insured's account at her bank in Greenville, November 12. The company's agent on the 10th of November sent a notice of the fire; this was received November 12, after the check had been deposited, and this was the first notice the company had of the loss. The letter to appellee of November 13, above referred to, followed the receipt of the notice. Thus it will be seen that the real issue is as to the enclosures in the blue envelope. If the check had been mailed November first, as testified by insured, it should have reached Chicago the following day. Had the blue envelope postmarked November 8th, contained the notice of loss as claimed by appellee it should have reached Chicago, November 9th, the day before the check was actually deposited, and it does not seem probable, with this notice of the loss, the company would have accepted the check, coming as it did nine days after it was due. The facts of this case are almost identical to those found in Continental Ins. Co. v. Hargrove, 131 Ky. 837, 116 S. W. 256, wherein the insured claimed that in payment of a premium due September 1, he mailed a check to the company on September 4, but the company did not receive it until the 20th, the day after the insured had received a notice from the company calling his attention to the fact that his installment note was due and unpaid. This notice was sent without knowledge on the part of the company that the insurer's property had been destroyed by fire September 12th. In reversing a judgment for plaintiff the court said:

"The evidence is so persuasive to our minds that the letter and checks were not received till the 20th that we must say that at first blush the verdict seems to be a flat contradiction of the great preponderance of the evidence. Not only the numerical weight—which is not so important—but the mute evidence endorsed on the check itself in due and usual course of affairs by persons who could have had no interest in fabricating evidence in the case."

In that case the envelope enclosing the remittance was not produced. The court says its preservation would have shown conclusively to the average mind when the letter was mailed and received. In the present case the blue envelope was preserved, and is filed in the record, and there can be no dispute as to the authenticity or certainty of its postmark. Where a letter is properly addressed and mailed, with postage prepaid, there is a presumption that it was received by the addressee as soon as it would be transmitted to him in the usual course of the mails. 16 Cyc. 1065. But this presumption may be rebutted by evidence that it was not, in fact, received or not received in the ordinary course of the mails. Id. 1070.

Speaking of the above text, the court in Benge, Admr. v. Eversole, 156 Ky. 131, 160 S. W. 911, held where there was a denial that a letter was received, and the mailing of the letter is the only evidence of service, the party upon whom the burden is cast of showing that a notice was given must fail in his proof. Mrs. Benge having denied that she received a certain letter from appellee, which the latter claims he sent her, there was no service of notice as required by statute and the case was reversed with instructions to peremptorily instruct the jury in her favor, the court saying:

"The surety is required to show that the notice was served in person and whenever the surety sends the notice by mail and the creditor denies that he received it, the presumption of delivery ceases and the surety stands under the statute with the burden of showing by other testimony that the letter was received."

See also Springfield Fire & M. Ins. Co. v. Jenkins, 9 Rep. 932; Bloom v. Wanner, 25 Rep. 1647.

In speaking on this question the court in Continental Ins. Co. v. Hargrove, *supra*, says:

"The mailing of a letter, duly stamped and properly addressed, to the known place of business of another does not raise a presumption of either law or fact that it was received by the addressee. Sullivan v. Kuykeldall, 82 Ky. 483, 6 Ky. L. R. 681, 56 Am. Rep. 901. It is, however, a relevant circumstance from which, if not sufficiently rebutted, the inference is fairly deducible, and from which the jury or other trier of the fact may find, that the latter was received by the addressee in due course. But the circumstance is only a circumstance, and like all such evidence, is rebuttable." A second verdict in favor of Hargrove was reversed by this court. See 143 Ky. 400, 136 S. W. 616.

While the verdict of the jury in the instant case was flagrantly against the evidence there were circumstances sufficient to justify the court in submitting the case to the jury under proper instructions. We see no reason, however, to point out this evidence.

It is urged that instruction two given by the court was erroneous, in that it allowed interest from the date of the fire and that the verdict for this reason was excessive. While the failure to furnish proof of loss in the time stipulated is not ground for defeating recovery under the policy the furnishing of proofs of loss, unless waived, is a condition precedent to the maintenance of an action to recover thereon. Niagara Fire Ins. Co. v. Layne, 162 Ky. 665, 172 S. W. 1090.

If the insured denies liability under the policy and refuses to pay the amount of loss claimed, the provision that no suit can be brought upon the policy until a certain time after the loss or after proofs are furnished is thereby waived and the right of action upon the policy accrues immediately upon such refusal. Phoenix Ins. Co. v. Flowers, 124 S. W. 403, 39 Ins. Law Journal, 415.

Where a policy provides that the loss shall be paid sixty days after the furnishing of notice and proofs of loss the insured is entitled to interest from the expiration of such time, and this as a matter of right, and not merely at the discretion of the jury. Hardy v. Lancashire Life Ins. Co., 166 Mass. 210, 44 N. E. 209, 33 L. R. A. 241, 55 Am. St. Rep. 395; Home Ins. Co. v. Patterson, 12 Rep. 941.

By denying all liability under the policy the company waived its right to withhold payment for the sixty day period provided for, and interest on the amount recover-

able will run from the date of the loss. Joyce on Ins., sec. 3458; Cooley's Briefs on Ins., p. 3840, 19 Cyc 972 (note); Hartford Fire Ins. Co. v. Landfare, etc., 63 Neb. 523, 116 N. W. 286; Nevins v. Rockingham Mutual Fire Ins. Co., 5 Foster (N. H.) 22; Western & Atlantic Pipe Line v. Home Ins. Co., 145 Penn. 346, 363, 22 Atl. 665, 27 Am. St. Rep. 703, 21 Ins. Law Journal 24. In the latter case the court said:

"The only other specification that requires further notice is the ninth, in relation to interest. A sufficient answer to that is, the company denied *in toto* its liability, and was therefore not entitled to the benefit of the provision in the policy giving sixty days for adjustment and payment of loss. In Aetna Ins. Co. v. Maguire, *supra*, it was held that such a clause applies only where the insurance company agrees to pay, or is undecided in regard to paying, but not when it peremptorily refuses to pay the loss. Further notice of the specifications is unnecessary. There is no merit in either of them."

If, as stated in Phoenix Ins. Co. v. Flower, *supra*, the company can not complain that plaintiff did not wait 60 days after furnishing its proof to file suit where the company had waived this provision by denying liability, we see no reason for making a distinction in the computation of interest. The company in this case could have required proof of loss had it so desired. When it waived this provision of the policy the plaintiff was privileged to bring her suit. This being true, there is no reason why the interest should not run from the time of the loss; we find no decision holding to the contrary.

When one of the company's agents was told by insured's husband the premium had been paid he said it was all right, and it is claimed the insurer thereby waived the forfeiture clause in the policy. We fail to find any element of waiver in this statement, it would seem to be proof of a contrary purpose. The agent evidently meant exactly what he said. to-wit: it was all right to have paid it. We do not see how the parties can interpret the agent's reply as a waiver of the policy provision.

Upon the return of the case in lieu of instruction one the court will give the following:

"The court instructs the jury that if you believe from the evidence that plaintiff's check issued in payment of the premium note due November 1, 1917, was received by the defendant at its office in Chicago, Illinois, before

the destruction of her property by fire on November 7, 1917, you will find for the plaintiff; unless you so believe you will find for the defendant.''

We find no error in instruction No. 2.

For the reasons given the judgment of the lower court is reversed for further proceedings not inconsistent herewith.