## Travelers' Insurance Company v. Turner.

(Decided May 22, 1931.)

TRABUE, DOOLAN, HELM & HELM for appellant.

W. W. THUM and W. T. McNALLY for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On August 12, 1919, the appellant issued to the Louisville Milling Company a group life insurance policy covering certain of the mill company's employees. The milling company was given what is known as the "master policy," and the employees who were insured were each given what is called a "certificate of insurance." The master policy provided payment of a principal sum upon the death of any of the employees insured and also provided for total disability benefits in the following language:

"If any employee insured under this policy shall furnish the company with due proof that he has before having attained the age of 60, become wholly disabled by bodily injury or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the company will pay to him in full settlement of all obligations to him hereunder the amount of insurance then effective on his life either in a single payment or in annual instalments as hereinafter set forth as the employer may elect— no payment in either case to be made until six months after receipt of due proof of permanent total disability as aforesaid. The amount of each annual instalment shall be twenty-one and four-tenths per cent., of the amount of insurance on such life if payable in five instalments; eleven and six-tenths per cent. if payable in ten instalments; eight and four-tenths per cent. if payable in fifteen instalments; six and eight-tenths per cent. if payable in twenty instalments. Any instalments remaining unpaid at the death of the employee shall be payable as they become due to the beneficiary nominated by the employee, who shall have the right to commute such remaining payments into one sum on the basis of interest at the rate of three and one-half per cent. per annum."

The master policy further provided that "the insurance of an employee covered herein shall end when he shall leave the service of the employer or be dismissed therefrom." The certificate of insurance contained like clauses to those quoted from the master policy. On November 5, 1919, appellee, Arthur Turner, entered the

employ of the Louisville Milling Company as a steam fitter. He was issued one of the certificates of insurance. On the 25th day of February, 1920, while the master policy and his certificate were in full force and effect, Turner received a severe injury to his head while engaged in his work for the milling company because of a sledge hammer slipping and fracturing his skull. He was off from work until March 19, 1920, when he returned and he continued in the service of the Louisville Milling Company until July, 1920, when he went to work at Camp Taylor at a slightly increased salary. He was there for about six weeks and then went to Camp Knox at a still greater increased salary. He stayed there for three or four weeks and then in November, 1920, went to work for the Henry Vogt Machine Company in Louisville where he stayed until June 11, 1921, when he left and went to live with his brother on a farm in Shelby county. Up until the time he went to live with his brother he was employed at all the places mentioned as a steam fitter. It is now admitted that Arthur Turner is totally disabled. To quote from the evidence of Dr. W. E. Gardner, a distinguished nerve specialist who examined Turner in 1924, he then had a stiffness and tremor which at that time was confined almost entirely to his right side, but which at the time of the trial had affected his whole body. He had a staring expression with a more or less of a masklike face. On the 18th day of November, 1929, Turner brought this suit against the insurance company to recover for his total disability. The insurance company defended on the theory that Turner's state of total disability did not occur while he was in the employ of the Louisville Milling Company, and hence was not covered by the policy upon which he sued. This issue was submitted to the jury, and they found a verdict in favor of Turner, and, from the judgment entered on that verdict, this appeal is prosecuted.

Appellant insists that under the evidence it was entitled to a peremptory instruction. In order to determine what merit there may be in this contention, it will be necessary only to consider the evidence for the appellee, and, if his evidence tended to establish that he was totally disabled while in the empoy of the Louisville Milling Company, he was entitled to have his case submitted to the jury, though the evidence for the appellant tended to contradict that for the appellee. In such state of case it would of course be for the jury to say what were

the facts from the contradictory evidence adduced. The question of what is total disability within the meaning of such a phrase in a life insurance policy must be considered from two angles which may be designated as those of quantity and quality. To what extent must an assured be disabled from doing anything before he can be called totally disabled? This is the angle of quantity. What line or lines of work must he be unable to perform to come within the terms of his policy? This is the angle of quality. In the instant case we have only the question of quantity. The decisions of our court bearing upon this proposition were reviewed and considered by this court in the case of Provident Life & Accident Ins. Co. v. Harris, 234 Ky. 358, 28 S. W. (2d) 40. In that case we pointed out how this jurisdiction had adopted the liberal construction doctrine which is to the effect that total disability does not mean absolute helplessness or entire physical disability, but rather an inability to do substantially or practically all material acts in the transaction of the insured's business in his customary and usual manner. In that case we pointed out that the insured was doing himself, although helped at times, all the duties incumbent upon him, and because of that we held that he was not entitled to recover under his policy for total disability. The cases of Doyle v. New Jersey Fidelity & Plate Glass Ins. Co., 168 Ky. 789, 182 S. W. 944, Ann. Cas. 1917 D. 851, and Ohio National Life Insurance Co. v. Stagner, 231 Ky. 275, 21 S. W. (2d) 289, were cited. In the Doyle case, because the insured did do substantially all the work he was accustomed to do before his accident, he was denied recovery, but in the Stagner case he was allowed to recover because, although he was able at times to do fitfully some things, he was substantially and practically unable to do all the material acts in the transaction of his business. To the same effect are Hagman v. Equitable Life Assurance Soc., of U. S., 214 Ky. 56, 282 S. W. 1112; Continental Casualty Co. v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079; and National Life Ins. Co. v. O'Brien's Ex'x, 155 Ky. 498, 159 S. W. 1134. With these rules in mind, we find that the appellee testified that, although he was in good health prior to the time his skull was fractured, and although prior to that time he was able to do practically and substantially all of the duties incumbent on him as a steam fitter immediately after his accident and when he attempted to go back to work, he was so afflicted with extreme and severe nervousness as to be disabled from performing practically

and substantially any of his duties as a steam fitter; that he was unable to adjust pipes or to fit the fittings to them or to screw on or off nuts or bolts and in fact to do anything except to direct his helper what should be done. He testified that all the work he was accustomed to do was thereafter done by his helpers, and in this he is corroborated by the helper he had at the Louisville Milling Company after the accident. Dr. Frye, who testified for him, stated that, in the absence of some history of some other cause for this nervousness, it could reasonably be attributed to the blow which appellee is conceded to have received. Appellee's evidence tended to show no other cause for the nervousness. Thus we have the appellee and his witnesses testifying to a state of case that brings it within the meaning of the words "total disability" in these policies of insurance, and hence appellant was not entitled to the peremptory instruction it insists upon. The cases of Cato v. Ætna Life Ins. Co., 164 Ga. 392, 138 S. E. 787; Douglas v. Metropolitan Life Ins. Co. (Mo. App.) 297 S. W. 87; and Kowalski v. Ætna Life Ins. Co., 266 Mass. 255, 165 N. E. 476, 63 A. L. R. 1030, relied upon by appellant, do not militate against this result. In the last two cases, the suit was to recover death benefits. The evidence overwhelmingly established that, in each case, the death occurred when the insured was no longer in the employ of the company which had procured the group insurance and hence when their insurance was no longer in effect. In the Cato case, the insured, though afflicted with tuberculosis, actually worked as a weaver in various textile mills and did the tasks assigned him up almost to his death. The Cato case is on its facts like the Harris case, supra, from this jurisdiction.

Appellant next contends that the instructions given by the court were erroneous. The court instructed almost verbatim in the language of the policy and submitted to the jury the question whether they believed that the appellee had become "wholly disabled by bodily injuries" received on February 25, 1920, and would be "permanently, continuously and wholly prevented thereby for life" from engaging in any occupation or employment for wages or profit. It is argued that this instruction is erroneous because the jury might believe that Turner was wholly disabled at the time he received his injuries and was at the time of the trial in such a state that he would thereafter be totally disabled, but that to find for appellee it was not compelled to believe

that, between the time of the accident and time of the trial, Turner had been continuously totally disabled. Of course, if the instruction is susceptible of such a construction, then so is the policy sued upon, and if that construction be more favorable to appellee than that which appellant insists upon then, under familiar principles of insurance law, that construction of the policy should be adopted. However, fairly considered in the light of the evidence to which it was directed, the instruction cannot be justly criticized by appellant even on its theory. Both sides fought the case on the field of whether Turner had by his accident been thereafter continuously totally disabled. The court told the jury that, before it could find for Turner, it must find that he was totally disabled by bodily injuries on February 25, 1920, and thereby would be totally disabled for life. It is hardly reasonable to think that the jury under the evidence in the case could have thought that appellant would yet be liable, even if there was a hiatus in the state of total disability of Turner. The use of the word "thereby" under the evidence carried with it the idea that the future disability should be a continuation of the total disability occurring on February 25, 1920. We find no merit in this contention of appellant.

Lastly appellant contends that, as requested by it, the court should have instructed the jury that, if it found for the appellee, then it should find that the verdict should be payable in twenty annual installments. Appellant rests this contention on the election given it in the master policy and certificate of insurance. Appellant, by denying all liability under the policy, lost any right of election it had to pay its liability in twenty annual installments. In the case of German Ins. Co. v. Hazard Bank, 126 Ky. 730, 104 S. W. 725, 726, 31 Ky. Law Rep. 1126, it was held that an insurance company lost its right of election to repair a house damaged by fire where it informed the insured that it would so elect unless he accepted a cash compromise which it offered. The court said:

"In insurance contracts, as in all other contracts, it is incumbent upon the parties to deal with each other in a plain, simple, and straightforward manner, and, where an election is to be exercised under a contract, notice should be made in such manner as to leave no doubt in the mind of the opposite

party of an intention to exercise it. The election to exercise the given right may or may not be coupled with some other proposition to be accepted by the opposing party in lieu of the exercise of the given right. To come to the question in hand, if the insurance company desired to exercise the right to rebuild the property, a right which it undoubtedly had, it should have exercised it by giving a plain, unambiguous notice of its intention, and not undertaken to use the privilege of rebuilding as a means to force the insured to accept a compromise.''

In the case of Home Insurance Co. of New York v. Roll, 187 Ky. 31, 218 S. W. 471, it was held that, where an insurance company repudiates liability, it loses its right to the 60-day period provided for by the policy within which to pay the loss, and interest runs from the date of the loss and not from the expiration of the 60-day period as it would have run but for the repudiation of the loss. The reason for the rule of these cases is that the elections concerning the mode and time of payment reserved to the insurer in its policy of insurance are obviously meant for its protection where it acknowledges liability, but where it repudiates liability, it at the same time waives all of its elections to pay such repudiated liability. In the homely language of the adage, ''The tail goes with the hide.'' The court did not err in refusing to allow appellant to pay its liability in twenty annual installments or to instruct the jury in that regard.

The judgment is affirmed.