## Prudential Insurance Co. of America v. Sweet.

(Decided Feb. 16, 1934.)

R. W. KEENON for appellant.

H. C. CLAY, G. I. RADER and McCOY & NOBLE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In this suit by the appellee against the appellant to recover on a group insurance policy issued by the appellant to the Louisville & Nashville Railroad Company to protect its employees against accidents and disabilities, the appellee recovered the full amount sued for, and from that judgment this appeal is prosecuted.

The appellee had for a number of years prior to 1930

been in the employ of the Louisville & Nashville Railroad Company, hereinafter called the railroad company, as a section hand. In March of that year he was injured; the extent of that injury being in dispute in this case. As we view the controlling issue, however, this dispute is immaterial. At all events, in April following, the appellee returned to work. Appellant claims that the appellee thereafter did the same character and kind of work he was doing prior to his accident. On the other hand, the appellee claims that he was given much lighter work to do than that which he had been doing before his accident. There had been issued 'to the appellee in 1925 a certificate of insurance under the group policy which the railroad company carried for the benefit of its employees. The certificate in part provided:

"If the said employee, while less than sixty years of age, and while the insurance on the life of said employee under said policy is in full force and effect, shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly, continuously and permanently unable to perform any work for any kind of compensation of financial value during the remainder of his or her lifetime, the amount of insurance payable at death from natural causes (in this case $1,000) will be paid to said employee in monthly installments during two years."

The certificate also provided that, when the insurance on the life of the employee terminated by reason of termination of employment for any reason whatsoever, the insurance company would on the terms set out in the certificate issue a converted form of insurance to the employee. The master policy is not in the record. There is not the slightest doubt from the evidence adduced in this record but that the appellant had constituted the railroad company its agent to handle all matters pertaining to the premiums and claims under the master policy and the certificates issued pursuant thereto.

On April 18, 1931, the officer of the railroad company who had in charge this matter of group insurance wrote to the appellee on a form in the heading of which appeared this: "Notice to employee laid off or granted leave of absence." In the body of the letter this officer stated that, in view of the fact that appellee's name

might not appear on the railroad company's payrolls subsequent to the month of May, his group insurance would terminate unless the premiums were promptly paid. The letter then reads:

"If laid off, it is possible that you may return to the service in the near future and this insurance will be continued for the month of April, 1931, if you will pay 85 cents representing your proportion of the premium for one month on or before April 30, 1931,"

to the officer mentioned in the letter. The letter continues:

"If you are laid off and do not make this payment, it will be understood that you do not wish to continue your insurance, in which event attention is called to the conversion privilege in your certificate."

Appellant did cease on orders from the railroad company to labor for it in April, 1931, and has not labored for it since. In the fall of that year he made claim under his certificate for total disability. He had continued to send in his premiums to the railroad company, and they continued to receive them. On March 1, 1932, the railroad company returned certain of these premiums to appellee's lawyer in a letter which in part read:

"With my letter of February 19th, I sent you postal money order and draft to be delivered to Mr. Sweet representing premiums he remitted to our treasurer but which could not be accepted for the reason his insurance has not been in force since the close of December, 1931."

Whatever may have been the condition of the appellee prior to October, 1931, the evidence is uncontradicted that, when examined by physicians at that time, he was found to be totally and permanently disabled within the protection afforded by the certificate of insurance if that certificate was then in full force and effect and if appellee at that time was under 60 years of age. It is the contention of the appellant that the certificate was not in full force and effect, first, because the appellee was not then in the employ of the railroad company, and, secondly, that he was over 60 years of age, and that there was no evidence to show that he had be-

come totally and permanently disabled prior to October, 1931. It will be noted that at the time the railroad company wrote to the appellee in April, 1931, it did not inform him that he was discharged or that his employment with the railroad company had terminated. The letter was written on a form indicating that it was sent to employees who were laid off or granted leave of absence. The wording of the letter itself indicates that the attitude of the railroad company was that appellee had been or would be simply laid off, for it told him how he could continue his group insurance during the lay off, and informed him what he must do should he elect to terminate his service with the railroad company. It did nothing later to contradict this portion until the following March. The letter of March, 1932, further indicates that the railroad, which, as we have said, was the agent of the appellant in these matters, considered the policy on the appellee in full force and effect even as late as December, 1931, and this could only have been on the assumption that from April to December appellee did not occupy the status of a discharged employee, but only that of an employee who had been laid off or granted a leave of absence.

We do not construe the provision in the certificate to the effect that the group insurance terminates when the employment terminates comprises or includes a temporary lay off or leave of absence. If the master policy contained any provisions bearing on this subject, it was the duty of the insurer to produce it, and, failing that, we are left only to the certificate to ascertain the terms of the insurance. The railroad company itself did not so construe the certificate, for it continued to receive the premiums from the appellee knowing that he was no longer actually at work for the railroad company. Usually these group policies, and especially the master policies, provide specifically that the termination of employment does not cover a temporary lay off or leave of absence. Such a specific provision in the policy is in line with the common sense view of the proposition, since, in the exigencies of production and commerce, there must be, and indeed are, many times when an employee will be temporarily laid off or granted a leave of absence without pay, and in such state of case neither the insurance company, the employer, or employee contemplate the cancellation or termination of

the insurance only to be revived with all the attendant bookkeeping expense and trouble when the employee returns to his labor. We are therefore convinced that this policy was in full force and effect at the time the appellant became totally and permanently disabled in October, 1931, and that his employment with the railroad had not then terminated within the meaning of the policy. There yet remains to be determined the question whether or not appellant at that time was 60 years of age.

On the witness stand, appellant testified that he was born November 11, 1872; that he knew this because of an entry in an old family Bible, which, since he had seen that entry, had become lost or destroyed, that the entry had been made by an uncle now deceased who told him that his age was as appellee testified. On the other hand, the appellant introduced evidence that in his early youth in applying for a marriage license the appellee had stated his age as that which would now make him 2 years older than he claimed to be on the stand; that some 15 or more years later, after his first wife's death, and when he remarried, he stated his age in accordance with his statement of it when he procured his first marriage license; that during all the intervening years since he was last married he had on many occasions given his age in accordance with what he had stated when he procured his marriage license and that after the accident of March, 1930, in filling out a statement of how it had happened, he had again given his age in accordance with the position he had taken all these years. Appellee did not deny any of this, and in fact stated that he had just allowed himself "to go two years older" than he really was all these years. The appellant contends that although the statement of a person as to his own age is ordinarily competent, being an exception to the hearsay rule, here the evidence of the appellee as to this matter was incompetent because the appellee had acquired his information by reason of a communication with one now deceased. It relies on section 606 of the Civil Code of Practice prohibiting one from testifying in his own behalf concerning conversations had with one now deceased. The express point has been ruled adversely to the contention of the appellant in the case of Whalen v. Nisbet, 95 Ky. 464, 26 S. W. 188, 16 Ky. Law Rep. 52. But even though the appellee's evidence was competent,

appellant contends that the finding of the jury that appellee was less than 60 years old at the time he became permanently disabled, if he did so, is flagrantly against the evidence. In the last analysis, the jury had no evidence on this subject except on the one hand the statements of the appellee made out of court and on the other the statements of the appellee made on the witness stand. The jury had the right to give the weight it chose to the possible motive of the appellee to testify as he did on the stand. It had a right to take into consideration the fact so common in life that people will for one reason or another diminish or magnify their age. The jury had a right to believe that when put on oath the appellee would then testify as to the truth of the matter. Hence it follows that its acceptance of the appellee's evidence given in court as against his statements made out of court is not flagrantly against the evidence.

It lastly contends that, as the policy provided that the insurance was to be paid in 24 installments, it was error of the court to adjudge a lump sum payment of the amount due. This point, too, under exactly the same state of the pleadings, was expressly decided adversely to the contention of the appellant in the case of Travelers' Insurance Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216.

Finding no error, the judgment is affirmed.