## Equitable Life Assurance Society of U. S. v. McDonald.

(Decided Oct. 11, 1935.)

WM. MARSHALL BULLITT, EUGENE B. COCHRAN and BRUCE & BULLITT for appellant.

LAWRENCE F. SPECKMAN for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellee was in the employ of the Standard Oil Company prior to May 1, 1930, as truck driver, hauling underground tanks, pumps, and containers of oil and gasoline. On the date mentioned he secured from appellant an individual certificate of insurance for $2,000, which provided that upon furnishing proof of having

become so disabled by injury or disease as to be wholly and presumably permanently prevented from pursuing gainful occupation, the insurer would pay either in a single sum or, at the option of the employer, the equivalent in a designated number of equal installments.

Appellee worked until about April 1, 1931, when he was transferred to lighter tasks, still driving a truck but hauling gasoline for delivery to service stations. This change in occupation was due to the fact that in March, 1931, appellee suffered an attack of influenza, which left him in a weakened condition. In July, 1931, he subjected himself to a clinical examination. Pictures and physical examinations led to a diagnosis showing moderately advanced tuberculosis. He continued his lighter work until the latter part of August, when, acting on the advice of Dr. Miller, he became a patient at Waverly Hills, and later underwent an operation consisting of a severance of the phrenic nerve, causing a compression or collapse of the affected portion of the lung, which brought about an improvement. Dr. Miller reported to the insurance company that his condition was quiescent; that he was capable of engaging in light work, but gave no assurance that "he would hold up."

In November, 1932, McDonald started to work for the Riddell Company manufacturing light furniture. He says that he applied to the Standard Oil Company for work, but without success. He remained with the Riddell Company for about eight weeks, when he "got to feeling bad" and had to quit. He remained at home and in the summer of 1933 was employed by the Kentucky Wagon Company, assisting in the assembling of bodies. He worked at this job a short time and again got to "feeling bad," and went home and remained about a month, then went back to work with the Wagon Company, and worked until September, 1933, when he "just gave it up and went home." In the spring of 1934 he tried the job again, but held it only a few weeks, when, as he expressed it, he "got the same old tired feeling."

Appellee filed his petition in June, 1933, making the appellant and the Standard Oil Company defendants, the latter going out on peremptory. In his petition he set out the facts with relation to his physical condition, filed the certificate which had been furnished him, and sought judgment in the sum of $2,000. The

assured made answer which was in the form of a general denial. Proof was heard, and upon submission of the cause to a jury a verdict was returned for $2,000, with interest at 6 per cent. from February 13, 1934. Motion for a new trial was overruled, and the insurer is here asking reversal on several grounds, which we shall take up in the order presented.

It is argued that appellee's cause fails because he relied on his individual certificate and failed to plead or prove the master policy. This same contention has recently been presented where the pleadings and facts were identical with the situation here.

In Equitable Life Assurance Society v. Smith, 260 Ky. 56, 83 S. W. (2d) 885, 886, in denying a similar claim, the court said:

"The petition stated a cause of action predicated on the certificate with allegations of a contract of insurance, meaning the group policy. The plaintiff did not have this master policy in his possession and never saw it. He sued on the only instrument the company had given him. If there was any change in the terms of the contract not disclosed by this certificate, the company should have pleaded it, and if the group policy contained anything contrary to or in conflict with this instrument, or had provisions in it which constituted a defense of which if it wished to avail itself, it should have filed its copy of the contract or by proper procedure have had the plaintiff produce it if he could."

See also, Equitable Life Ins. Co. v. Reynolds, 259 Ky. 504, 82 S. W. (2d) 509.

The second ground urged for reversal is that the opinions of Drs. Brock and Miller as to McDonald's physical condition were founded on hospital records and films, which they did not make, hence incompetent, and that the testimony of Koenig and Stettler about McDonald's complaints to them was incompetent.

It appears that all the pictures made save those made by Dr. Miller, and the one at the City Hospital, were made by Gilbert Perry, who stated that he was an X-ray technician and had been engaged as such at Waverly Hills for seven years. He took X-ray pictures of McDonald on the following dates: August 14, 1931, November 19, 1931, January 28, 1932, and July 30, 1932,

and perhaps others. These films were identified by him and filed. This witness did not undertake to interpret the films because he said that such was the duty of a physician. The method by which these films were identified was by numbering them serially. Each patient was assigned a serial number and the film number placed on the index card of the patient. There was no objection to Perry's testimony or any part of it, including the introduction of the films.

Dr. Miller testified that it was his duty to pass on suspected cases of tuberculosis, to interpret X-ray films, to supervise clinics, and that he had the final say after examination, in ordering patients to Waverly Hills. It will be noted that the main controversy as to Dr. Miller's testimony came up with regard to what Dr. Miller declared to be his "first examination and interpretation of his X-ray film in July." He said that film was made in July, 1931, and was read as showing pulmonary tuberculosis and probably active. He said that McDonald was examined July 23, by an assistant, and was considered negative. Dr. Miller did not pass on this examination. Later the doctor said the prior examination was not satisfactory, and he had the patient return later in July, 1931, when he was examined in his presence, and McDonald was sent up to the City Hospital for an X-ray, and upon reading of that film he was admitted to the hospital. When asked by counsel, "Do you know that is a film of Terry McDonald?" he answered, "Yes," and to the question, "How do you know it?" he replied:

"Because I made films subsequently to that. I compared these films with those I made myself, and they showed the same characteristic lesions there."

Objection was made to the testimony about the X-ray film and motion to strike overruled. As to this objection and the court's ruling thereon it amounts to little on the question of McDonald's condition. It is noted that the doctor says it was on his interpretation of the film that McDonald was admitted to the hospital. McDonald's condition during the entire period from 1931 to 1934 was closely observed, not only by means of X-rays taken during the time, but by physical examinations made at intervals. Dr. Miller testified as to fluorscopic and other X-ray examinations, and his con-

clusion was based on these examinations, some of which Dr. Miller made himself about which there was little quarrel, and from all of these examinations Dr. Miller based his final conclusion, not that McDonald should be sent to Waverly Hills, but that he was totally and permanently disabled from working.

As to Dr. Brock's testimony with relation to X-rays and records, the only objection seems to have been that they were not made by him. This witness was allowed to read reports made to the Standard Oil Company giving the physical condition of McDonald. Most of these were permitted to be read without objection by appellant, though there was objection to the witness giving an opinion, based on the contents. It was shown by Dr. Brock that he was the custodian of the records of the hospital, and that he was the doctor in charge of the institution, and his conclusions were based on his interpretation of X-ray films made by the hospital technician; from reports, most of which the witness had made himself, and copies thereof sent to the insurer.

A careful reading of the evidence assuredly discloses the fact that McDonald was suffering from tuberculosis in an advanced stage, and that it was the opinion of both doctors that he was totally incapacitated from doing any work, and these opinions were based on competent evidence, sufficient to take the case to the jury and uphold its verdict.

As to the contention that the testimony of Koenig and Stettler was objectionable, there is little room for serious complaint. Both these witnesses undertook to say that McDonald was not able to do the work assigned to him. In each instance when the witnesses were asked to describe or say what McDonald said about his condition, the court very properly admonished them that they could not and should not repeat any self-serving statements made by McDonald. These witnesses did not say anything about McDonald's physical condition, nor give their opinion as to his ability to work, wholly or partially. They simply said that he tried to work and quit; said he could not do the work. This testimony was not objectionable, as was the testimony in Horn's Adm'r v. Prudential Ins. Co., 252 Ky. 137, 65 S. W. (2d) 1017, and the cases cited therein. The court upheld defendant on its objections to such portions of the witnesses' testimony as would have been objectionable if admitted.

During the progress of the trial and at the close of defendant's testimony, the defendant produced proofs of claim, made up by the appellee, the employer, and attending physician, and it was stipulated that "the foregoing papers were offered in evidence, and by agreement of parties considered read in evidence." No objection was raised to any portion of the contents of the proofs of claim until counsel for appellee undertook to read the following portions of it to the jury:

"In the opinion of the employer is this employee wholly and presumably permanently prevented for life from pursuing any and all gainful occupations? A. Yes." "Does the employer favorably recommend this claim for total and permanent disability benefits? A. Yes."

At the close of testimony for appellant, and while the appellee had the floor in rebuttal, counsel for appellee read the portions of the claims above quoted to the jury over appellant's objection, made on the ground that the proofs were not offered as substantive evidence, but only for the purpose of showing that proofs had been filed. The controversy arose in this way: John McGuire was called in rebuttal for defendant, and while being examined, one of the jurors asked this question: "I understood you to say the Standard Oil Company tried to get the insurance company to pay McDonald. Did you make that statement?" And he answered: "Yes sir. * * * The Standard Oil Company did think the claim was due to be paid until we had reports from the doctors * * *." At this point counsel for McDonald asked to be allowed to present the exhibit to the jury, and appellant objected because "this is not offered as substantive evidence," and the court ruled as follows: "If it is filed as evidence he has a right to bring it out. It has been considered as read when it is filed. I think this paper is part of the record and it can be read to the jury," and it was read to jury, the court admonishing the jury that it should be read only for the purpose of showing, if it did show, McDonald's condition at the time the proof was made. This paper may have been stipulated into the record, not to be read as substantive evidence, but merely to show that proof was filed; but we note that when we come to the fifth point urged by appellant, the exhibit must have been intended to be used by appellant as substantive evidence to the extent that it showed the employer had approved an

installment plan of payment. Whatever opinion the employer expressed as to McDonald's condition at the time of making the proof was based on the opinion of Dr. Cherry, who stated in the disability claim that McDonald was "conclusively not able to pursue any gainful occupation and would not be able to resume any business."

This stipulated evidence, under the court's admonition, was only to be considered by the jury as bearing upon McDonald's condition in 1932, and since there was other substantive evidence as to his condition at that time and later, even though the admission should be treated as erroneous, it was not such as to prejudice the substantial rights of appellant.

On the fourth point, i. e., that McDonald was partially and not permanently disabled, we have a situation where two doctors testified that he was permanently disabled, and two who testified that the most they could say was that he had what is known as a case of arrested tuberculosis. One of these doctors positively testified that the disablement was not permanent, and the other was not quite so positive. This was the vital question submitted to the jury under appropriate instructions, backed up by proof sufficient to require its submission, and being a question wholly for the jury, the court cannot say that the jury came to an erroneous conclusion. This court, in construing policies similar to the one here in issue, has clearly defined the terms "permanent and total disability," and the proof here justified a conclusion that the disability was permanent, within the meaning of the words as used in McDonald's certificate. Jefferson Standard Life Ins. Co. v. Hurt, 254 Ky. 603, 72 S. W. (2d) 20; John Hancock Mut. Life Ins. Co. v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848; Prudential Ins. Co. v. Harris, 254 Ky. 23, 70 S. W. (2d) 949.

The next point urged by appellant is that since the individual certificate held by McDonald provided that any sum due under the policy should be paid either in a single sum, or, at the option of the employer, an equivalent sum in a fixed number of equal annual installments, as set forth in the certificate, which option had been exercised, it was error to allow McDonald the lump sum payment

Counsel argues that the employer "when it first had

opportunity to do so exercised the option to have insurer pay McDonald on the installment plan partially"; that in 1932 the employer "recommended" the insurer to pay McDonald $1,000 in a lump sum, under the contributory plan and the remainder in monthly installments over a period of two years. Counsel takes the position that the judgment should be reversed because it requires the entire $2,000 to be paid in a lump sum, saying that since the option was exercised there was no waiver; counsel for appellee takes the position that since the insurer denied liability, it waived its right to pay by installment at the option of the employer. Here the question seems to be whether or not the insurer denied liability. If so, then the conduct of the insurer operates as a waiver of the right of the employer to direct the method of payment. John Hancock Mut. Life Ins. Co. v. Cave, supra, in which is cited Travelers' Ins. Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216; Home Ins. Co. v. Roll, 187 Ky. 31, 218 S. W. 471.

Counsel for appellant says "there is no proof that the Equitable refusedt o pay McDonald." The evidence shows that McDonald said that the insurer refused to pay any sum on the policy sued on. In addition, Mr. McGuire, testifying for appellant, said:

"The Standard Oil Company did think the claim was due to be paid until we had reports from the doctors and we had the reports from the Waverly Hills' doctors, and also Dr. Ellis Duncan, I believe. After the insurance company declined to pay we could not go any further with it."

This is sufficient evidence to justify the court in concluding that there was denial of liability.

The last point made is that the court erred in instructing the jury that if a verdict was found for the plaintiff, the jury should find for him interest from February 13, 1932. The certificate, which McDonald held, provided that "the company will pay six months after receipt of such proof in full settlement of all obligation under such policy, the full amount of such insurance," etc. The proof was filed March 19, 1932. Counsel for appellant argues that it was error to allow interest from February 13, 1932, insisting that September 19, 1932, is the date interest should begin under

its contract. The court fixed February 13, 1932, which was six months after August 13, 1931, as the date from which interest should run, the latter being the date fixed in the proof of claim, as of total disability, and the same date fixed in the petition from which interest was asked.

It is true that under the certificate held by Mc-Donald, payment of the obligation was deferred six months from the date of filing proofs, but what has been said with regard to the waiver of method of payment of the entire sum applies here. The insurer denied liability and therefore waived its right to claim the benefit of the six months delay for payment. In Travelers' Ins. Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216, 219, this court said:

> "In the case of Home Insurance Co. of New York v. Roll, 187 Ky. 31, 218 S. W. 471, it was held that, where an insurance company repudiates liability, it loses its right to the 60-day period provided for by the policy within which to pay the loss, and interest runs from the date of the loss and not from the expiration of the 60-day period as it would have run but for the repudiation of the loss. The reason for the rule of these cases is that the elections concerning the mode and time of payment reserved to the insurer in its policy of insurance are obviously meant for its protection where it acknowledges liability, but, where it repudiates liability, it at the same time waives all of its elections to pay such repudiated liability. In the homely language of the adage, 'The tail goes with the hide.' "

See, also, Hagman v. Equitable Life Assurance Society, 214 Ky. 56, 282 S. W. 1112.

In the case which the court quotes, it appears that the "loss" was a fire loss, and the time of the loss was easily determined; but it is no more difficult to determine the time when McDonald became totally disabled, and he fixed that date as August 13, 1931. The court correctly ruled the interest due from that date.

After a careful review of the record, we express the opinion that the court below committed no error on the trial which was prejudicial to the substantial rights of the appellant.

Judgment affirmed.