The **TRAVELERS INSURANCE COMPANY,**
Appellants,

v.

**Fred T. HAWKS, Appellee.**

Court of Appeals of Kentucky.

Dec. 13, 1974.

Rehearing Denied Feb. 7, 1975.

Armer H. Mahan, Jr., Louisville, for appellant.

Wilton P. Long, Jr., Speckman, Burbank & Long, Louisville, for appellee.

JAMES PARK, Jr., Special Commissioner.

On December 12, 1967, while employed by the General Electric Company, the plaintiff-appellee, Fred T. Hawks, was struck in the right eye by a broken spring from an automatic grinder. For an extended pe-

riod of time, Hawks received medical treatment which attempted to restore vision to the injured eye. However, Hawks was discharged on December 21, 1970, with an uncorrected loss of visual acuity of ninety percent in the right eye. It is undisputed that Hawks sustained the loss of use of sight in his right eye at the time of the accident on December 12, 1967, even though there were unsuccessful attempts to restore vision in the eye.

At the time of the injury on December 12, 1967, Hawks was covered by a group insurance policy procured by his employer, General Electric Company, from the defendant-appellant, The Travelers Insurance Company. Under this group policy, coverage in the amount of $50,000.00 was afforded for the accidental loss of the sight of an eye. As defined in this policy:

" 'Loss of sight of eye' means complete loss of sight of eye which never can be regained."

The policy further provided that benefits were payable "upon receipt of proof of claim." In addition, the policy provided that the proof of claim was to be filed not later than ninety days after the end of the calendar year in which the loss was incurred "unless it is not reasonably possible to do so and proof is filed as soon as is reasonably possible."

Hawks made claim under the policy on March 1, 1971. Travelers denied the claim, and on March 31, 1972, Hawks instituted the proceeding out of which this appeal arises. On June 27, the trial court sustained the motion of Hawks for summary judgment, and a judgment was entered in favor of Hawks against the Travelers Insurance Company for the principal sum of $50,000.00.

The only issue on this appeal concerns the time from which interest accrues on the principal sum of the policy. The trial court in a supplemental judgment held that Hawks was entitled to interest on the principal amount from the date of the accident,

December 12, 1967. The Travelers Insurance Company appeals from the supplemental judgment contending that Hawks is not entitled to any interest prior to the date he filed his proof of loss, March 1, 1971. Travelers has paid the principal sum of the policy, $50,000.00, and all interest accruing after March 1, 1971.

■ As a general rule, interest on the amount payable under an insurance policy commences to run from the time when the loss is payable by the terms of the policy. 6A Appleman, Insurance Law and Practice, Section 4023. Under the terms of the policy in question, the $50,000.00 payable to Hawks was not due until he filed the proof of loss on March 1, 1971. Had Hawks made demand for payment under the policy prior to that time, Travelers would have been under no duty to make payment under the terms of the policy.

In his brief, Hawks concedes that Travelers would have been completely exonerated from any interest up to the date the claim was filed if Travelers had then admitted liability and tendered the policy benefits without delay. However, Hawks further contends that Travelers lost the right to avoid the payment of pre-claim interest by its denial of liability. The trial court accepted Hawks' argument relying upon the opinion in Equitable Life Assurance Soc. of U. S. v. McDonald, 261 Ky. 148, 87 S.W.2d 123 (1935). The McDonald case in turn requires a consideration of the other Kentucky insurance cases which have determined the time from which interest accrues.

In Home Insurance Co. of New York v. Roll, 187 Ky. 31, 218 S.W. 471 (1920), the policy in question required a proof of loss as a condition to payment of any fire loss. The policy further provided that payment was to be made sixty days after proofs of loss were furnished. The company denied liability within a few days after the fire loss and *before* any proofs of loss had been filed by the insured. This court held that interest accrued from the date of the loss.

The company could have required a proof of loss from the insured, but the company waived the provision of the policy requiring a proof of loss by denying liability prior to the filing of the proof of loss. Inasmuch as the company had waived the provision of the policy requiring the filing of a proof of loss, the insured was privileged to bring suit immediately. This being true, the court concluded that there was no reason why interest should not run from the time of the loss.

In Prudential Insurance Co. v. Cox, 254 Ky. 98, 71 S.W.2d 31 (1934), the insured did not file a proof of disability until fifteen months after the disability arose. The company denied liability under the policy *after* the filing of the proof of disability. There was no evidence that the company knew of the insured's condition prior to his filing his proof of disability. The court held that the company was not required to pay interest until its obligation to pay under the policy accrued by the insureds filing the proof of disability.

In Equitable Life Assurance Soc. of U. S. v. Obertate, 260 Ky. 374, 85 S.W.2d 1004 (1935), a life insurance policy provided for payment upon receipt of a proof of death. Following the insured's death, the administratrix furnished the company with a proof of death. The company subsequently denied liability under the policy. A suit followed, and it was adjudged that the company was liable under the policy. The lower court awarded interest on the policy from the date of death. On appeal, this court reversed, holding:

"The beneficiary, on the return of the verdict in her favor, was entitled to interest from the time at which under the policy the money was due, in the absence of allegations and proof that the Equitable, beginning at the death of Obertate, denied its liability under the policy, then interest on the amount recovered runs from the date of the denial. Home Ins. Co. of N. Y. v. Roll, 187 Ky. 31, 218 S. W. 471, and cases cited."

Construing the three opinions in the *Roll, Cox,* and *Obertate* cases together, it is possible to deduce the following rule: Interest accrues under an insurance policy from the date payment becomes due. Usually, payment becomes due when the insured has performed any conditions to payment by the filing of the proof of claim. However, the insurance company may accelerate the time for payment by denying liability before the insured has satisfied all conditions to payment, in which case interest accrues from the date of the loss.

The opinion in Equitable Life Assurance Soc. of U. S. v. McDonald, supra, was rendered less than six months after the decision in the *Obertate* case. Nevertheless, the *McDonald* opinion appeared to enunciate a different rule. In the *McDonald* case, the policy provided for payment six months after the filing of the proofs of loss. The disability occurred on August 13, 1931. Proofs of loss were not filed until March, 1932. Although the opinion does not give the specific date that the company denied liability, a careful reading of the opinion suggests that the company did not deny liability until *after* the filing of the proofs of loss. Nevertheless, the court upheld the decision of the lower court granting interest from February 13, 1932 (six months after the date of disability), rather than September 19, 1932 (six months after the filing of the proof of loss.)

In the *McDonald* case it was recognized that the company was not required to make payment until six months elapsed following the filing of the proofs of loss. However, the opinion held that the company waived its right to delay payment under the terms of the policy when it denied liability. Quoting from its earlier decision in Travelers' Ins. Co. v. Turner, 239 Ky. 191, 39 S.W.2d 216 (1931), the court concluded that policy provisions concerning the mode and time of payment are meant for the protection of the company only when it acknowledges liability. When it repudiates liability, the company simultaneously

waives all of its elections with respect to the mode and time of payment. The *Turner* decision did not involve interest, but rather the loss of the company's right to elect to pay in installments rather than a lump sum, following a denial of liability. The opinion in the *McDonald* case makes no mention of the *Obertate* case. The *Roll* case is cited in the portion of the opinion quoted from the *Turner* case, but no significance is attached to the fact that the denial of liability in the *Roll* case was prior to the filing of the proof of loss.

In Edwards v. Equitable Life Assur. Soc. of U. S., 296 Ky. 448, 177 S.W.2d 574 (1944), suit was brought to recover on a life insurance policy based upon the presumption of the insured's death on the ground of seven years' disappearance. Although upholding a recovery on the policy, the court held that interest accrued only from the commencement of the action, not from the presumed date of the insured's death. It was pointed out that the policy provided that the benefits were payable only upon receipt of the proof of death and that there was nothing in the record to show when the proof of loss was actually filed. Thus, interest could be awarded only from the date the action was commenced. There was no reference to the waiver doctrine mentioned in the *McDonald* case, and the opinion is completely silent on the date of the insurance company's denial of liability.

■ In the absence of a provision in the policy specifying the time for the payment of benefits, the company's duty to pay would arise upon the occurrence of the loss covered by the policy, and interest would accrue from that date. However, most policies provide that the company is under no duty to pay until it has been notified of the loss by means of a proof of loss. Many policies also provide for a period after the filing of the proof of loss during which the company may investigate the claim. The provisions for the filing of a proof of loss and any period to investigate

the claim are obviously for the benefit of the insurance company. If the company does not await the filing of a proof of loss before denying liability, there is no need for the insured to do a useless act by filing a proof of loss. By denying liability *before* the filing of the proof of loss, the company waives that requirement, and the time for payment under the policy is accelerated. By denying liability before the filing of the proof of loss, the company becomes obligated to pay at least from the date of its denial of liability. See Home Ins. Co. of N. Y. v. Roll, supra; Equitable Life Assurance Soc. of U. S. v. Obertate, supra.

■ In the present case, Travelers did not deny Hawks' claim until after he had filed the proof of loss. The fact that Travelers ultimately denied liability does not warrant an inference that it waived its right under the policy to require filing of a proof of loss as a condition to payment. See Gardner v. Freystown Mut. Fire Ins. Co., 350 Pa. 1, 37 A.2d 535, 154 A.L.R. 1351 (1944). Travelers cannot be said to have elected to pay interest from December 12, 1967, when there is no evidence that it had any knowledge of the claim before Hawks filed his proof of claim on March 1, 1971.

■ Hawks also argues that Travelers' refusal to pay the claim was made in bad faith, inasmuch as Travelers' liability was decided upon a motion for summary judgment. There are two answers to this argument. First, any wrongful act on the part of Travelers did not occur until after March 1, 1971, when Hawks filed the proof of claim, and Travelers has paid interest on the principal amount of the policy from that date. Second, the amount of interest which would have accrued from the date of the injury would in no way be related to the actual expenses incurred by Hawks in litigation. If insureds are to be compensated when an insurance carrier denies liability in bad faith, then the legislature should properly provide the remedy.

In fact, the legislature has provided such a remedy in the case of unauthorized insurance carriers doing business in Kentucky. See KRS 304.11–040(15).[1] Last, it is neither pled nor proved in this case that Travelers acted in bad faith.

This court concludes that interest accrues on amounts payable under an insurance policy only from the time that the payment is due under the terms of the policy unless the insurance company denies liability before the filing of a proof of loss or other prerequisite to payment. To the extent that it is inconsistent with this opinion, the decision in Equitable Life Assurance Soc. of U. S. v. McDonald, supra, is overruled.

The judgment is reversed.

All concur.

---

1. In Volume 11 of the official edition of the Kentucky Revised Statutes published by The Bobbs-Merrill Company, Inc., the statutory remedy apparently applies to authorized insurance carried. However, this is an error which is demonstrated not only by the context of the statute, but also by reference to the official acts. See 1970 Kentucky Acts, Chapter 301, Subtitle 11, Sec. 4(15).