## Sivels v. Federal Life Insurance Co.

(Decided Oct. 27, 1936.)

ADRIAN H. TERRELL and C. C. GRASSHAM for appellant.
WHEELER, WHEELER & SHELBOURNE for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

James B. Sivels died October 7, 1932, of uremic poisoning. At the time of his death he carried an accident insurance policy in the Federal Life Insurance Company, on which the annual premium was $1. The policy insured him in the sum of $2,000 against death resulting within sixty days from the date of accident, directly or independently of all other causes, from bodily injuries sustained by the wrecking or disablement of any vehicle or car operated by any private carrier or private person in which the insured was riding, or by being accidentally thrown therefrom. The policy could be re-

newed with the consent of the company from year to year, by the payment of $1 in advance each year, and it was provided that each full year's renewal should add 10 per cent. to the specific losses set forth in the policy until such accumulations reached 50 per cent. of the principal amount. The insured's widow, who was named the beneficiary in the policy, brought an action to recover $2,800, the face amount of the policy plus $800, the accumulated benefits. She alleged, in substance, that on August 24, 1932, while the policy was in full force and effect, James B. Sivels sustained bodily injuries, through external, violent, and accidental means, by the wrecking and disablement of the automobile in which he was riding, and by being accidentally thrown therefrom when it ran off the highway and into a ditch; that as a direct and proximate result of the accident he received bruises, ruptures, and injuries to his bladder and stomach and other organs of his body, and as a direct and proximate result of such injuries, which were sustained solely through external, violent, and accidental means, within the contemplation of the terms of the policy, and independently of all other causes, he died within sixty days from the date of the accident. It was alleged that the accident occurred 28 miles south of Mayfield, Ky., on Highway 69. On the trial of the case the jury returned a verdict for the plaintiff, and this court reversed the judgment on the ground that the trial court erred in overruling the defendant's motion for a directed verdict in its favor. Federal Life Insurance Company v. Sivels, 256 Ky. 520, 76 S. W. (2d) 608, 610. It was held that the proof totally failed to show that the disablement of the automobile was the proximate cause of the insured's death. In the course of the opinion it was said:

"There is no evidence that the blowout of the tire or the swerving of the automobile to the opposite side of the road was attended with any such violent jerking or lurching as was calculated to cause strain or injury to insured or to the occupants of the car. There is likewise an absence of any showing that insured was thrown against the steering wheel, door, or any other part of the automobile or that he was thrown therefrom. It is merely shown that, when or immediately before the automobile came to a stop, insured 'slid' out and walked around to the rear. The witness Simmons testified

that he did not fall, and there is nothing in his evidence tending to show that any part of his body came in such violent contact with any part of the automobile as would cause any bruise or traumatic injury. There is an utter absence of evidence to show that the alleged or any injuries to insured resulted from the disablement of the automobile. A recovery cannot be had upon mere speculation or supposition as to the cause of the alleged injuries or death of insured, but, in order to impose liability upon the company, it is necessary to show some causal relation between the disablement of the car and the death of insured.''

On the second trial of the case the court sustained the motion for a directed verdict made by the defendant at the conclusion of plaintiff's evidence, and plaintiff appeals, claiming that the evidence on the second trial was materially different from the evidence on the first trial, and was sufficient to authorize a submission of the case to the jury.

R. C. Simmons, a nephew of the insured, was the only witness who testified at either trial concerning the alleged accident, and if there was additional evidence on the second trial sufficient to supply the deficiencies pointed out in the opinion on the former appeal, it must be found in his testimony. At the first trial he testified that he accompanied his uncle and the latter's wife to Paris, Tenn., where they visited a few days in the home of the insured's daughter. They traveled in a small coupe owned by the insured. They left Paris, Tenn., August 24, 1932, on the return trip to Paducah, Ky. The alleged accident occurred south of Mayfield, while the insured was driving the car at a speed of about 30 miles an hour. One of the rear tires blew out, and the car swerved from the right side nearly over to the left side of the road. The insured turned the switch off and put his foot on the brakes, but before the car came to a complete stop he slid out of the car. Simmons fixed the car, and drove it back to Paducah. Soon after the accident, and before they reached Mayfield, the insured began complaining of feeling bad. The witness was repeatedly asked concerning the actions and complaints of his uncle at the time of the accident, and he said: ''He never complained of any certain thing to me. He only complained of feeling bad.'' And in answer to the

question, "What was he complaining of?" he answered, "I don't know." At the second trial Simmons referred to the injury to the right rear tire as a blowout, but he admitted that it was only punctured and that he repaired it on the roadside. He testified that when the tire became deflated, his uncle turned off the switch, applied the brakes, and pulled the car to the right side of the road. The car did not run into a ditch or stop with a sudden jerk. His uncle opened the door and put his left foot on the ground before the car came to a full stop, but when it was moving very slowly. His left foot being on the ground and his right foot in the car caused his body to twist, but he maintained his balance and did not fall to the ground. He then testified concerning his uncle's actions and statements at the scene of the alleged accident, and his frequent request to stop at rest rooms between Mayfield and Paducah. An inference that the insured was injured while he was alighting from the car is sought to be deduced from this evidence, but conceding, for the sake of argument, that such an inference is warranted, it does not follow that a causal relationship existed between the disablement of the car and the injury suffered by the insured. The insured was not thrown from the car. After turning off the ignition, applying the brakes, and turning the car to the right side of the road, he opened the door and stepped out. There was no evidence that he was getting out to avoid injury. The testimony of Simmons refutes such a theory. The car had come almost to a full stop and was at a place where the occupants were not in danger, and when the danger, if any, resulting from the disablement, had ceased to exist. The disablement of the car was not the proximate cause of the alleged injury suffered by the insured, but merely afforded the occasion for the accident which subsequently happened.

In Inter-Southern Life Insurance Company v. Foster, 248 Ky. 481, 58 S. W. (2d) 668, many cases are cited and discussed in which similar clauses in limited liability policies were construed, and where liability was denied under analogous facts. The slight additional evidence produced at the second trial did not remove the cause of the insured's death from the field of speculation and surmise, and the circuit court did not err in sustaining appellee's motion for a directed verdict.

The judgment is affirmed.